## Capps v. Gore.

(Decided October 22, 1929.)

SELDEN Y. TRIMBLE, JAMES BREATHITT, Jr., JAMES A. McKENZIE, JOHN T. KING and ALVAN H. CLARK for the Circuit Judge.

HUBERT MEREDITH for Grubbs et al.

### PER CURIAM.

At the August, 1929, primary in Christian county, J. D. Capps, Lee Gore, and A. E. Mullins, and perhaps others, were candidates for the Democratic nomination for jailer. Gore was given the certificate of nomination, and Capps and Mullins instituted contest proceedings. At the same time Millard D. Grubbs instituted a contest proceeding against John C. Duffy for the Democratic nomination for county attorney. R. H. Croft instituted a like contest against Lambert Campbell for the Republican nomination for representative in the General Assembly, and H. C. Meyers instituted a similar proceeding against Barrett Brown for the Republican nomination for sheriff. The contest cases were heard together, and the circuit court dismissed all the proceedings. Appeals were then filed in this court on August 30, 1929, and at the same time "objections and exceptions to the transcript of evidence and exhibits filed therewith by the official stenographer" were filed in this court, together with an affidavit in support of the exceptions. The several appellees filed a notice and motion to strike the "objections and exceptions" from the record. At the same time the circuit judge, as well as the appellants in the cases, requested an investigation as to the charges, explicit and implicit, against Hon. Ira D. Smith, Circuit Judge, contained in the exceptions and the affidavit in support thereof.

The exceptions were not verified, but the affidavit in support of them contained charges of wrongful conduct on the part of the circuit judge in making and approving

the bill of exceptions. The motion to strike the "exceptions and affidavit" from the record was sustained, and at the same time the court made a written order for an investigation of the charges contained in the affidavits, upon which a hearing was had on September 28, 1929. The order recited the causes which prompted the investigation, and continued:

> "Whereas serious charges were made in the document and affidavits hereinbefore referred to concerning the official actions of the Circuit Judge who tried this case below in making up the record for this court, which charges should be investigated with the view of ascertaining the facts in the matter to the end that proper disciplinary measures may be enforced, as the truth is shown."

At the outset we are confronted with a contention that this court is without jurisdiction to conduct the investigation or to institute any disciplinary proceedings, if deemed appropriate under the facts developed by the investigation. It is said the proceeding is not embraced by section 110 of the Constitution because it is no part of the appellate jurisdiction or within the authority to issue such writs as may be necessary to maintain a general control over inferior jurisdictions. It is conceded that there is inherent power in the court to have the records sent up for its consideration duly authenticated and to have their integrity maintained; but it is contended that its power is limited to the accomplishment of that purpose, and, if any disciplinary measure is adopted, it must necessarily be a rule for contempt, which must be remitted to the criminal courts. Riley. v. Wallace, 188 Ky. 471, 222 S. W. 1085, 11 A. L. R, 337, is relied upon to sustain the argument. But it was held in that case that all courts of record of superior jurisdiction have the inherent power to punish for contempt. The restraining order was issued in that case because the chancellor was not authorized to proceed by information and rule to punish a contempt, which consisted of alleged false swearing by a witness, when the judge had no actual or judicial knowledge that the person proceeded against had sworn falsely.

We need not consider whether the matter proposed may not be necessarily incidental to the appellate jurisdiction of the court, since we are convinced that it may be maintained on a broader ground. We do not doubt

the power of this court to make the investigation or to take such measures as might be required by the facts developed. The right of self-preservation is inherent in the court, and is not derived from, or dependent upon, any act of the Legislature, or any express provision of the Constitution. It inheres in the court as such, and is necessary to vindicate its authority and to maintain its integrity. In re Woolley, 11 Bush 95. In the case of People of the State of N. Y. ex rel. v. Charles W. Culkin, Sheriff, 248 N. Y. 465, 162 N. E. 487, 493, 60 A. L. R. 851, the question is reviewed at length.

The power and duty of a court to conduct an inquiry into the conduct of its officers, and to administer such discipline as may be deemed necessary to maintain the authority and integrity of the court, is fully supported by authorities long honored. The power does not infringe upon the inquisitorial powers of grand juries, or usurp the functions of the criminal law. It is a power resting in the court by which it may protect itself and vindicate its integrity by punishing any conduct calculated to undermine or impair its authority or dignity. If an investigation should develop evidence of crime, it may be referred to the appropriate tribunals for action; but there may be conduct not amounting to crime calling for discipline by this court, and for which no other remedy may be available. The power of the court to protect its officers from improper charges, to reqiure true, correct, and complete records for review by it, to protect itself and its officers from indignity or insidious influences, may not be doubted. The administration of justice must be maintained in its purity, and, ''if the house is to be cleaned, it is for those who occupy and govern it, rather than for strangers to do the noisome work.'' The power must reside where the responsibility rests, and no Supreme Court of a sovereign state could justify the toleration of conduct or practices impairing its dignity, its integrity, or its authority on the supine ground that it was helpless to preserve, protect, and defend itself against such evils. 2 R. C. L. 939; In re Woolley, 11 Bush 95; Rubin v. State, 194 Wis. 207, 216 N. W. 513.

We approve the principles respecting the exercise of the power so well expressed by Judge Cardozo in the Culkin case, supra, when he said:

''No doubt the power can be abused, but that is true of power generally. In discharging a function

so responsible and delicate, the courts will refrain, we may be sure, from a surveillance of the profession that would be merely odious or arbitrary. They will act considerately and cautiously, mindful at all times of the dignity of the bar and of the resentment certain to be engendered by any tyrannous intervention.''

Entertaining no doubt as to the power or propriety of the action taken in this case, we proceed to dispose of it on the merits.

The evidence heard by the court showed that the contest cases were tried in the circuit court and oral evidence heard and reported by the official court stenographer. The official stenographer promptly prepared his transcript, and a copy of it was given to Millard D. Grubbs, who was a party to one of the contests, and counsel in all of them. As originally prepared, the tabulation in the races for county attorney, jailer, sheriff, and representative appeared on page six of the transcript. The record book of the board of election commissioners was in court for the use of counsel and the court, but the tabulation read to the reporter related only to the races involved in the contests. The contestants also had read into the record a certicate dated August 7, 1929, and as it was first copied on page 8; the tabulation appeared immediately over the certificate. The circuit judge very properly observed that the tabulation and certificate appearing together without any explanation did not truly reflect the condition of the record, and he ordered the page changed so as to include the entire tabulation, which gave an accurate and exact picture of the facts in their proper relation as they were presented to the circuit court. It was this change in the transcript as presented which prompted the objections, although numerous other objections and exceptions were incorporated in the documents. It was not only proper, but the duty of the circuit judge, to require the correction to be made before he approved the transcript. The Civil Code of Practice, sec. 337, expressly so provides, and manifestly the signature of the judge and approval by the court would be a futile gesture if he had no power to make the necessary corrections.

The other complaints made in the affidavit and exceptions were not called to the attention of the circuit judge, and, when he signed the transcript, he did not know that any other objections were made. The same

section of the Code further provides that a party objecting to a judge's correction of an exception which purports to state the evidence may, within five days after the bill is signed, file the exception as written by him, if its truth be attested by the affidavits of two bystanders, but its truth may be controverted and maintained by other affidavits filed in the clerk's office but not exceeding five on either side. Section 338 of the Civil Code of Practice provides that no exception shall be regarded, unless the decision to which it relates is prejudicial to the substantial rights of the party excepting.

In Carter Coal Co. v. Love, 173 Ky. 49, 190 S. W. 481, it was pointed out that, if the trial judge refuses to permit counsel to make a part of the record or put upon the order book his objections to a ruling or to make it a part of the bill of exceptions, counsel should prepare a bystanders' bill, setting out the matter complained of in the manner provided in section 337 of the Civil Code of Practice, and file it in the Court of Appeals as a part of the record. In Thompson v. Tyrie, 200 Ky. 741, 255 S. W. 526, the same rule was reaffirmed. Counsel did not pursue the remedy provided by that section of the Code, but, when he presented his objections and exceptions to the transcript to the clerk, and he refused to file them, he immediately filed them in this court.

We find in the evidence no basis whatever for the charge that Judge Smith signed the transcript without giving the contestants' attorney an opportunity to examine or approve it. We further find that the changes in the transcript made at the direction of the judge were not only within the express authority conferred upon the circuit judge in the matter of making up the bill of exceptions, but comported with his duty in that particular. The judge was not only justified, but required, to take substantially the steps he did in order to make the record accurate. As to the other objections to the evidence shown by the transcript, they were not called to the attention of the circuit judge and he took no action whatever in respect to them. It is clear, therefore, that the circuit judge acted with entire propriety in this case, and criticism of his conduct was without ground.

It is suggested that this conclusion would require us to find that the appellants, and their attorney, Millard D. Grubbs, were in fault in making the charges. In view of subsequent developments in the circuit court, of which we have learned, we deem it proper to dismiss without

prejudice any further pursuit of the inquiry as to the character or quality of the conduct of the contestants or their counsel.

An order will be entered accordingly.