## In re Sparks.

(Decided Nov. 20, 1936.)

94

A. W. MANN and B. M. VINCENT, Attorney General, for complainants.

J. F. STEWART, WOODS, STEWART & NICKELL and CHARLES PRATER for respondent.

OPINION OF THE COURT BY JUDGE STITES—Confirming report of Bar Commissioners.

This is a proceeding based on a report of the Board of Bar Commissioners recommending the disbarment of Sam J. Sparks, an attorney at law. Four separate complaints were investigated by the Board, and the recommendation of disbarment is based on the findings made under three of the complaints, known in the record as the S. A. Bowman count, the Creech count, and the Ham Newman count.

The Board of Bar Commissioners appointed two of its members as a trial committee for the purpose of investigating and reporting to it on the charges against the respondent Sparks. The trial committee submitted a written report to the Board, to which no exceptions were filed. Thereupon the matter was heard by the full Board, and the report of the trial committee was approved and made a part of the findings submitted by the Board to this court. No exceptions have been taken to the findings of fact. The respondent has simply demurred to the charges on the ground that "neither of said charges state facts sufficient to support or constitute an offense as to the conduct or demeanor of an attorney at law and because section 101 and subsections thereof of the Kentucky Statutes and the rules of this court adopted in pursuance thereof are unconstitutional and void and have no force or effect."

It is argued that section 110 of the Constitution of Kentucky, providing (in part) that "the court of appeals shall have appellate jurisdiction only," renders section 101-1 et seq. of the Kentucky Statutes invalid in so far as it seeks to authorize an original proceeding in this court to discipline or disbar an attorney. Section

101-1, to the extent that it relates to our duties in dealing with the professional conduct of attorneys at law (the only point here involved), gave this court no power which it did not already possess. In Capps v. Gore, 231 Ky. 185, 21 S. W. (2d) 266, 267, it was shown that charges had been made against a circuit judge in regard to his actions in a case pending in this court. An independent investigation of the alleged misconduct of the judge was ordered, and, in exonerating him of the charges, it was said:

"At the outset we are confronted with a contention that this court is without jurisdiction to conduct the investigation or to institute any disciplinary proceedings, if deemed appropriate under the facts developed by the investigation. It is said the proceeding is not embraced by Section 110 of the Constitution because it is no part of the appellate jurisdiction or within the authority to issue such writs as may be necessary to maintain a general control over inferior jurisdictions. * * *

"We need not consider whether the matter proposed may not be necessarily incidental to the appellate jurisdiction of the court, since we are convinced that it may be maintained on a broader ground. We do not doubt the power of this court to make the investigation or to take such measures as might be required by the facts developed. The right of self-preservation is inherent in the court, and is not derived from, or dependent upon, any act of the Legislature, or any express provision of the Constitution. It inheres in the court as such, and is necessary to vindicate its authority and to maintain its integrity. In re Woolley, 11 Bush, 95. In the case of People of the State of N. Y. ex rel. v. Charles W. Culkin, Sheriff, 248 N. Y. 465, 162 N. E. 487, 493, 60 A. L. R. 851, the question is reviewed at length.

"The power and duty of a court to conduct an inquiry into the conduct of its officers, and to administer such discipline as may be deemed necessary to maintain the authority and integrity of the court, is fully supported by authorities long honored. * * * It is a power resting in the court by which it may protect itself and vindicate its integ-

rity by punishing any conduct calculated to undermine or impair its authority or dignity. If an investigation should develop evidence of crime, it may be referred to the appropriate tribunals for action; but there may be conduct not amounting to crime calling for discipline by this court, and for which no other remedy may be available. * * * The administration of justice must be maintained in its purity, and, 'if the house is to be cleaned, it is for those who occupy and govern it, rather than for strangers to do the noisome work.' The power must reside where the responsibility rests, and no Supreme Court of a sovereign state could justify the toleration of conduct or practices impairing its dignity, its integrity, or its authority on the supine ground that it was helpless to preserve, protect, and defend itself against such evils. 2 R. C. L. 939; In re Woolley, 11 Bush 95; Rubin v. State, 194 Wis. 207, 216 N. W. 513.''

In conclusion, the court considered the propriety of taking disciplinary steps suo motu against the appellants and their attorney anent the unfounded charges asserted against the circuit judge, but determined *on the facts*—not because of lack of power—to take no action. Clearly, this case is authority for the proposition that this court possesses an inherent power to deal with matters such as that now before us. In Commonwealth ex rel. Ward v. Harrington, 266 Ky. 41, 98 S. W. (2d) 53, decided November 6, 1936, the validity of section 101-1 et seq., in so far as it applies to disciplinary proceedings in this court, was expressly upheld. It was pointed out in that opinion that an investigation looking to the disciplining of an attorney at law was not an ''adversary'' proceeding and was not therefore within the class of litigation over which the Court of Appeals has ''appellate jurisdiction only.'' The opinion is not only sound in principle, but it is sustained by authorities from this and other jurisdictions to the point of demonstration. For example, see In re Richards, 333 Mo. 907, 63 S. W. (2d) 672; State v. Cannon, 196 Wis. 534, 221 N. W. 603; Legal Club of Lynchburg v. Light, 137 Va. 249, 119 S. E. 55. The power to regulate the conduct and qualifications of its officers does not depend upon constitutional or statutory grounds. It is a power which is inherent in this court as a court—

appropriate, indeed necessary, to the proper administration of justice. That we have, in deference to the Bar Integration Act (Ky. Stats. secs. 101-1, 101-2), set up a standing Board of Commissioners and machinery to conduct and report on investigations concerning the conduct of attorneys, does not alter the fact that we are but exerting an inherent power.

It is also argued for the respondent that section 101-1 is contrary to sections 2, 15, 27, 28, and 135 of the State Constitution. What we have said above substantially answers the contentions advanced under the foregoing sections of the Constitution. The fallacy in respondent's argument rests in the assumption (1) that the privilege of practicing law is a property right, and (2) that this is an adversary proceeding. Neither premise is sound. The argument that this is an arbitrary power which the court is arrogating to itself or accepting from the Legislature likewise misconceives the nature of the duty. It has limitations no less real because they are inherent. It is an unpleasant task to sit in judgment upon a brother member of the bar, particularly where, as here, the facts are disputed. It is a grave responsibility, to be assumed only with a determination to uphold the ideals and traditions of an honorable profession and to protect the public from overreaching and fraud. The very burden of the duty is itself a guaranty that the power will not be misused or prostituted. The power is not made arbitrary merely because it exists in this court as well as in other courts of the Commonwealth. If not an arbitrary power in other courts, it is not arbitrary here.

Under the S. A. Bowman count, the facts found by the Board were in substance that respondent was guilty of bad faith and deceit in dealing with an attorney from another state in connection with the collection of a fee in a case where both were employed to represent the same clients.

Under the Creech count, the Board recommended that the charges be dismissed, but considered the facts there adduced because of the light which they threw upon the practice of respondent in securing deeds to himself of property formerly belonging to his clients. Respondent represented Creech in a divorce case, and at the close of the litigation one of respondent's daugh-

ters turned up with title to a piece of real property theretofore owned by Creech. In recommending the dismissal of the charges under this count, the Board of Bar Commissioners considered that respondent had successfully represented Creech in a protracted litigation, and, while expressing doubts as to whether or not Creech had been overreached in the matter, concluded that the evidence was insufficient to justify disciplinary measures on this count alone.

Under the Ham Newman count, the Board found that the respondent had prepared a deed for one Ham Newman and his wife to execute, representing to them that the deed was to one W. H. Clay, to whom they were indebted. Neither Newman nor his wife could read. Subsequently respondent turned up in possession of a deed from Ham Newman and his wife to himself. It was determined by the Board, and amply supported by the evidence, that respondent had either misrepresented the name of the grantee to Mr. and Mrs. Newman or else had substituted a new first page to the deed, naming himself as grantee instead of Clay.

While there are no exceptions to the findings of fact made by the Board other than the demurrer to their sufficiency to constitute an offense authorizing disbarment, in view of the gravity of the disciplinary measures involved, and in view of the fact that practice under the Bar Integration Act of 1934 had not become definitely crystallized when this proceeding was submitted, we have carefully reviewed the whole record, and we concur in the findings made. It is pointed out in Talbott, Auditor, v. Park, 256 Ky. 534, 76 S. W. (2d) 600, that the duties of the members of the Board are analogous to those of a master commissioner. A similar analogy exists with respect to the report of the Board to this court. No reason is apparent why, in the ordinary proceeding of this kind, it should be necessary for us to go behind the findings of the Board unless requested to do so by proper exception.

An attorney must be of good moral character before he is eligible for admission to the bar. It is even more important that he should retain that character after admission and after clients are induced to place their trust in him on the faith of his professional integrity. The law requires that a lawyer shall maintain a higher moral standard than simply to avoid conviction

of embezzlement or larceny. His clients are entitled to rely on his honesty and on his devotion to their interests.

It is not possible to read the record of respondent's doings, particularly in the Ham Newman matter, without concluding that he is not now possessed of that degree of character necessary to continue in the practice of law. Whether this arises from conscious wrongdoing or from a mere lack of understanding of the obligations and duties of an attorney, it is unnecessary for us to determine. Our duty is clear.

It is ordered that the report of the Board of Bar Commissioners be and it is hereby confirmed, and that the respondent, Sam J. Sparks, be and he is hereby disbarred from the further practice of law in this Commonwealth.

Whole court sitting.