**TEAMSTERS LOCAL UNION NO. 783 et al.,**
**Appellants,**

v.

**COCA–COLA BOTTLING COMPANY OF LOUISVILLE, Appellee.**

Court of Appeals of Kentucky.

June 30, 1967.

Rehearing Denied Sept. 29, 1967.

three of its members appeal from an order of the Jefferson Circuit Court finding them guilty of civil contempts and assessing an aggregate punishment against each of them in an amount exceeding the $30 or 30-hour maximum fixed by KRS 432.-260(1).[1]

The appellee, Coca-Cola Bottling Company of Louisville, hereinafter called Coca-Cola, brought this suit for injunctive relief against certain actions by the union and its members in connection with a labor dispute. A temporary injunction against various activities was isued on June 25, 1965. On July 9 and 14, 1965, Coca-Cola moved for rules against the union and individual members named in the motions to show cause why they should not be punished for contempt of court for violating the temporary injunction. The motions were supported by numerous affidavits setting forth the incidents alleged to have been in violation. The rules were issued and brought on for trial by the court without a jury. Judgment was entered finding that 27 separate instances of violation had occurred, for which the union was fined $30 each, totalling $810. Each of the three union members who are appealing was found guilty of more than one act of contempt and was separately assessed for each, so that although the punishment for each separate incident was 30 hours in jail (or less), the total for each of these three men exceeded 30 hours.[2]

The case is before us on a partial record, and we have neither the affidavits filed in support of the motions nor a transcript of the testimony showing the various acts for which the appellants were found in contempt. However, in the absence of a transcript it is presumed that the evidence supports the judgment, Pentecostal Church of Christ v. Webb, Ky., 412 S.W. 2d 264, 265 (1967), and it seems to be con-

---

Herbert L. Segal, Louisville, for appellants.

John K. Skaggs, Jr., George Logan, Louisville, for appellee.

PALMORE, Judge.

Teamsters Local Union No. 783, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, hereinafter called the union, and

1. "A court shall not impose a fine of more than thirty dollars or imprison for more than thirty hours for contempt without the intervention of a jury."

2. For example, the appellant Brown was found guilty of five offenses, or "counts," and his punishment was fixed at 30 hours on one and eight hours apiece on the other four, totalling 62 hours.

ceded that the judgment is based upon a series of separate acts committed by individual members of the union, each of which acts, standing alone, was in violation of the injunction and therefore served as a valid basis for holding the offender in contempt.

All of the appellants contend that there can be only one finding of contempt against each of them on one show cause order that is couched in general terms and does not separately specify different acts of contempt. The union contends also that in any event the various acts of its individual members constituted but "a single, continuous act of contempt" insofar as the union itself is concerned.

The questions thus raised are of first impression in this court. Prior to the enactment of what is now KRS 432.260 "and at common law, courts possessed unlimited powers to punish for contempt." Talbott v. Commonwealth, 207 Ky. 749, 270 S.W. 32, 33 (1925). Indeed, the validity of the statute is not free of doubt. Cf. Arnold v. Commonwealth, 80 Ky. 300, 304, 44 Am.Rep. 480 (1882). "It may well be doubted whether the legislature could limit the authority of the courts respecting practice and proceedings since all of our courts are created by the Constitution and all judicial power is lodged in them, save and except the Senate in cases of impeachment." Crook v. Schumann, 292 Ky. 750, 167 S.W.2d 836, 840 (1943). Be that as it may, and without further examination of the constitutional question at this time, we are disposed to give the statute that construction which is most compatible with the ancient and indispensable power of a court of law to preserve its dignity and enforce its authority.

"While there are but few cases dealing with the question * * * it seems settled that a court has power to assess punishment for more than one act of contempt in a single proceeding." Annotation, 160 A.L.R. 1104, citing among other cases Ex parte Genecov, 143 Tex. 476, 186 S.W.2d 225, 160 A.L.R. 1099 (1945), from which we quote the following passage:

"It would hardly be contended that after a court has punished a party to the limit of the statute for a violation of its injunction and such party has paid the penalty imposed upon him, he could thereafter violate the injunction with impunity and the court would be powerless to punish him therefor. Obviously, the statute places no such limitation upon the power of a district court. Neither could it reasonably be contended that the trial court could divide one contemptuous act into thirty separate acts and assess the maximum punishment provided by statute for each of those acts. Had the relator been charged with but one continuous act of polluting the streams, and had the court concluded that each day or each hour of his violation constituted a separate and distinct contemptuous act, relator's points would be well taken. But that is not the case presented. The motion upon which the contempt order was entered charged the relator, along with others, with thirty-six separate, distinct and independent violations of the injunction in the operation of several leases and the trial court, after a hearing, sustained thirty of such charges, finding in favor of relator on the other six. With particularity the order describes each and every act of which relator was found to be guilty and the punishment assessed against him was a fine of $50 and confinement in the county jail for a period of twenty-four hours 'for each and every of the aforesaid acts.' Relator was served with notice, and was given a hearing at which he was confronted by the witnesses who testified against him."

Appellants distinguish this case from *Genecov* on the ground that here there was only one charge of contempt. In that the show cause orders did not specify the incidents reflected in the affidavits filed in support of the motions the distinction is valid, but we have no inclination to exalt technicalities over substance. The motions

were duly served on the respondents. The information was in the supporting affidavits. Hence the respondents had ample notice of the precise charges leveled by the show cause orders. As a matter of fact, if it had been necessary for the show cause orders to contain a statement of the particular violation or violations alleged in the affidavits filed with the motions, the trial court could not have found any of the appellants in contempt, because the show cause orders did not cite any specific violations. If for purposes of due process we equate contempt proceedings with criminal proceedings, as the Texas court did in *Genecov,* the motion and affidavit may be likened to a complaint, information or indictment, and the show cause order to a summons or bench warrant. It is the motion, and not the show cause order, that is the charging instrument, and if it does not provide enough information to enable the responding party to defend himself he is free to move for appropriate relief. There is no real due process question here.

 We hold that every act in which an individual appellant participated that constituted a violation of the injunction was a separate contempt for which each participant was separately punishable regardless of whether the aggregate amount of punishment exceeded maximum limits permissible by KRS 432.260 without a jury trial. Stated another way, the statute does no more than limit the punishment for one indivisible act of contempt.

From what we have said thus far it follows that if the union is in contempt at all it is in contempt each time its individual members and representatives are in contempt, subject to the qualification that if two or more individual members of the union jointly committed a single act of contempt, the union in that instance is amenable to punishment for one contempt

only.[3] If it is subject to punishment for something John Jones did in the morning it would be absurd to say that it is not subject to punishment for a repetition of the same act, or the commission of another contemptuous act, by John Jones or other members later in the day. The union makes no contention that it is not liable for at least one contempt. So far as we are concerned, that ends its case. If it is liable for one it is liable for all.

The judgment is affirmed.

All concur.

---

3. The record does not disclose whether the 27 contempts of which the union was found guilty include any duplications representing the same incident, so we must assume there are none.