**Tupp ARNETT, Petitioner,**

**v.**

**Judge N. Mitchell MEADE, Respondent.**

Court of Appeals of Kentucky.

Jan. 22, 1971.

Roger B. Sledd, Lexington, Edward F. Prichard, Jr., Frankfort, for petitioner.

George E. Barker, Commonwealth's Atty., Lexington, for respondent.

CULLEN, Commissioner.

Judge N. Mitchell Meade of the Fayette Circuit Court found Tupp Arnett to be in contempt of court for refusing to answer certain questions propounded to him as witness called by the prosecution in a criminal case. Holding unconstitutional so much of KRS 421.140 and 432.260 as would prohibit his imposing such a punishment, the judge, without impaneling a jury, sentenced Arnett to a term of 30 days in jail and a fine of $500. Arnett has sought from this court an order prohibiting enforcement of the contempt punishment. He maintains not only that the punishment exceeds the power of the circuit judge but that he was not in contempt.

The refusal to answer the questions was based upon the invoking by Arnett of the protection of the Fifth Amendment against self-incrimination. The first question confronting this court is whether the circumstances indicated such a probability of Arnett's being subjected to a criminal prosecution, if he answered the questions, to warrant his invoking the Fifth Amendment. In answering this question it is necessary to determine, first, *what* crimes might reasonably have been anticipated to be disclosed by Arnett's answers, and, second, whether Arnett would have immunity from prosecution for those crimes, under the traditional test of double jeopardy, or under the theories of collateral estoppel or merger.

A statement of the facts is essential to an understanding of the issues.

Edward Lyle Goldy, Warren J. Flannery and Billie Utterback were indicted on two charges; one of kidnapping Job Turner, Jr., for the purpose of holding him for ransom, in violation of KRS 435.-140; and the other of imprisoning Turner without demand for ransom, in violation of KRS 435.150. Tupp Arnett was indicted on charges of *aiding* and *abetting* the other defendants in the commission of the charged offenses.

The case went to trial against all four defendants. Turner was introduced as a witness and he testified as to the circumstances of his alleged kidnapping, at the outset of which Goldy, standing on the road by a purportedly disabled 1965 lavender Chevrolet automobile, induced Turner to give him a ride, whereupon Goldy forced Turner to drive to a point in the country, where he was transferred to another automobile. He identified Goldy, Flannery and Utterback as participants but gave no evidence implicating Arnett. At the conclusion of Turner's testimony the Commonwealth's attorney moved that the indictment against Arnett be dismissed, stating that "under the circumstances the Commonwealth is not going to be able to make out a case against Tupp Arnett." The motion was sustained and the indictment against Arnett was dismissed. However, the Commonwealth's attorney then called Arnett to the stand as a witness for the prosecution, and undertook to question him.

After obtaining from the witness the admission that his name was Tupp Arnett, the Commonwealth's attorney asked him this question: "On or about the 17th day of February of this year, Mr. Arnett, did you own a lavender color '65 or '66 Chevrolet?" On the advice of the attorney who had represented him when the trial commenced, and who was representing the other defendants, Arnett refused to answer, claiming the privilege against self-incrimination. The trial judge forthwith held him in contempt and directed that he be confined in jail "until he purges himself of contempt by answering the question or questions to be propounded to him by the Commonwealth's attorney." Arnett promptly made application to this court for an order of prohibition and an order was entered directing the trial judge to conduct an appropriate hearing out of the presence of the jury and make an adequate record thereof so as to enable the court to determine whether Arnett was within the protection of the Fifth Amendment as to questions to be propounded to him. The

order further directed that Arnett be admitted to reasonable bail pending final order of this court.

The trial judge then proceeded to conduct a hearing out of the presence of the jury, at which Arnett was represented by counsel other than the one who represented the defendants still on trial. This hearing consisted of the asking by the Commonwealth's attorney of a number of questions of Arnett, his refusals to answer them, and the trial judge's ruling, as each refusal was made, that Arnett was in contempt. The questions were such that affirmative answers would have disclosed that on February 17, 1970, Arnett owned a 1965 or 1966 lavender Chevrolet; that on that day he saw Utterback and Goldy and at their request drove them in his automobile to Lexington; that later on that day he turned his automobile over to Goldy and Utterback and he took Utterback's automobile and drove it to a point on a rural road in Fayette County; that he waited there for the arrival of Goldy and Utterback and eventually saw Utterback drive up in Arnett's lavender automobile; that subsequently Goldy and Turner arrived in Turner's automobile, driven by Turner; that Turner, Goldy and Utterback got into Utterback's automobile and drove away to the east; that Arnett then followed them in his automobile; that he was promised money by Utterback or Goldy for the use of his automobile on that occasion; that he had discussed with Flannery the matter of using his automobile for the purpose of transporting Turner to Salt Lick to meet Flannery.

The trial judge ruled that answering the questions would not incriminate Arnett because of the protection of the rule of double jeopardy arising from the fact that the indictment against Arnett for aiding and abetting had been dismissed after commencement of the trial. The judge further ruled that KRS 421.140 and 432.260 are "unconstitutional in infringing upon the inherent authority of this Court to govern its own proceedings," and he imposed upon Arnett a jail sentence of 30 days and a fine of $500. However, he admitted Arnett to bail pending a review by this court of his rulings.

In the meantime the trial of Goldy, Flannery and Utterback had been suspended. When Arnett remained steadfast in his refusal to testify the trial court ordered that the trial resume, and it did, resulting in a hung jury and a mistrial. An order then was entered for a new trial, which is yet to be held.

As stated at the outset of this opinion, the first determination to be made is what crimes might reasonably have been anticipated to be disclosed by Arnett's answers. We approach the question using the guidelines set forth in Young v. Knight, Ky., 329 S.W.2d 195 at 201, as follows:

"* * * it is uniformly recognized that it is for the court and not the witness to say whether refusal to answer is justified. * * * Should it appear to the court that in the setting in which the question was asked there is a reasonable possibility of exposure to prosecution or involvement in a crime by reason of a responsive answer, the claim of privilege must prevail. But the danger of self-incrimination must be real and substantial in the ordinary course of things, for the law does not permit a witness arbitrarily to hide behind an imaginary or unappreciable danger or risk. * * *

"The particular question which a witness refuses to answer may not be considered in isolation. In adjudicating the right of immunity the court must be able to discern from the character of the question the other facts adduced in the case some tangible and substantial probability that the answer of the witness might help to convict him of a crime.

"* * * The Supreme Court seems to have covered the whole matter in Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 818, 95 L.Ed. 1118, in say-

ing * * * 'To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question * * * might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." ' * * * "

See also Kinslow v. Carter, Ky., 282 S.W. 2d 141; Commonwealth v. Rhine, Ky., 303 S.W.2d 301; Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653.

There is nothing in the circumstances of the instant case to suggest that Arnett has a police record or in the past has been involved in a course of criminal activities, so there is no basis for anticipating that answering the questions might expose Arnett to prosecution for some offense wholly unrelated to the Turner affair. Cf. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. In the setting in which the questions were asked, and from the questions themselves, the only crimes of which there appears to have been any reasonable possibility of disclosure of Arnett's involvement would be (1) aiding and abetting in Turner's abduction or detention, (2) common-law conspiracy to abduct or detain Turner, or (3) statutory banding and confederating to abduct or detain Turner, KRS 437.110.

Our consideration is addressed now to the question of whether Arnett is immune from prosecution for the three crimes above listed, because, if so, his disclosures of involvement in those crimes would not *incriminate* him. Plainly, Arnett cannot again be prosecuted for aiding and abetting in Turner's abduction or detention, because he was directly in jeopardy on that charge. But the answer as to the other two crimes is not so plain.

As concerns the common-law offense of conspiracy, which is a misdemeanor, it possibly could be held that a prosecution

of Arnett for that offense would be precluded under the doctrine of *merger*. See Queen v. Commonwealth, Ky., 434 S.W.2d 318; Faison v. Commonwealth, Ky., 405 S.W.2d 943; Commonwealth v. Barnett, 196 Ky. 731, 245 S.W. 874; Commonwealth v. Blackburn, 62 Ky. 4. But that doctrine is of very questionable soundness. See Annotations, 37 A.L.R. 778 and 75 A.L.R. 1411. We prefer to seek some more valid rationale.

The rule in this jurisdiction, and generally elsewhere, seems to be that the commission of a substantive crime and a conspiracy to commit it are separate offenses, so that a person may be prosecuted for both crimes without being put twice in jeopardy. See Commonwealth v. Fletcher, 298 Ky. 585, 183 S.W.2d 644; Myers v. Commonwealth, 210 Ky. 373, 275 S.W. 883; United States v. Sharpe, D.C., 61 F.Supp. 237; 16 Am.Jur.2d, Conspiracy, sec. 31, p. 143; 22 C.J.S. Criminal Law § 288, p. 755. This rule appears to have grown out of the "same evidence" test for applying the doctrine of double jeopardy, which is that double jeopardy exists if proof of what is set out in the second indictment, if made on the trial of the first indictment, would have sustained the first indictment. See Easley v. Commonwealth, Ky., 320 S.W.2d 778. Since proof of consummation of the conspiracy by commission of the planned crime is not necessary to sustain a conviction of a conspiracy, Commonwealth v. Barnett, 196 Ky. 731, 245 S.W. 874, the proof which would convict of a conspiracy would not sustain a conviction of the substantive crime.

A few cases have held that a conviction or acquittal on a charge of *aiding and abetting* in the commission of a crime is a bar to a subsequent prosecution for conspiracy to commit that crime. See Davis v. People, 22 Colo. 1, 43 P. 122; State v. McNeil, 161 Wash. 221, 296 P. 555. However, that holding does not seem to be valid under a strict application of the "same evidence" rule, because a conviction of conspiracy could be sustained with-

out proof of commission of the substantive crime, whereas in order to sustain a conviction of aiding and abetting there must be proof that the substantive crime was committed. Young v. Commonwealth, 224 Ky. 334, 6 S.W.2d 269.

■ This brings us to a consideration of the applicability of the doctrine of collateral estoppel as concerns the constitutional protection against double jeopardy. Under Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, the doctrine is applicable in state prosecutions. In applying this doctrine a court is required to examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. The inquiry must be set in a practical frame, and viewed with an eye to all the circumstances of the proceedings. In *Ashe* the court found that the "single rationally conceivable issue" in the previous case was whether the instant defendant had been one of the robbers, and the jury had found that he had not; wherefore the issue could not be relitigated in a subsequent prosecution.

■ From the record of the proceedings in the instant case we think it is plain that the single rationally conceivable issue on the trial of Arnett under the original indictment was whether Arnett had in fact aided and abetted the principals in the abduction of Turner. The Commonwealth had introduced evidence of the fact of the abduction and of the guilt of the principals; however, as the Commonwealth's attorney said when he moved to dismiss the indictment against Arnett, "the

Commonwealth is not going to be able to make out a case against Tupp Arnett." In other words, the Commonwealth could not prove the issue of Arnett's presence, actual or constructive, and his participation. See Hensley v. Commonwealth, Ky., 280 S.W.2d 540. Had the Commonwealth proved that Arnett had *conspired* with the defendants to abduct Turner, or had *banded* and *confederated* and gone forth with them to commit the offense, that would have been sufficient proof of his participation. See Dalzell v. Commonwealth, Ky., 312 S.W.2d 354; Warfield v. Commonwealth, Ky., 334 S.W.2d 913. The Commonwealth conceded that it could not prove such conspiring, or banding and confederating, when it moved to dismiss the indictment. Accordingly, we think that under the doctrine of collateral estoppel the Commonwealth is precluded from prosecuting Arnett for common-law conspiracy or for statutory banding and confederating, in connection with the Turner abduction. It is no bar to the application of the doctrine that the judgment forming the basis for the estoppel was in effect one by consent or confession. See 46 Am.Jur.2d, Judgments, sec. 456, p. 625. Under the circumstances, the judgment amounts to an adjudication that Arnett had committed *no* acts of aiding or abetting.

It is our conclusion, therefore, that Arnett was not entitled to invoke the protection of the Fifth Amendment as to the questions propounded to him, and properly was held in contempt for his refusal to answer the questions.[1]

This brings us to the question of the validity of the punishment imposed.

■ We first observe that KRS 421.140 provides for *punishment* for contempt by a person in refusing to answer as a wit-

1. We note the rule that incriminating evidence derived from *coerced* testimony cannot be used against the witness in any subsequent criminal prosecution. See Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653; Kinslow v. Carter, Ky., 282 S.W.2d 141. However, justification for coercion can be found only in a properly based finding that there is no reasonable probability of exposure of the witness to prosecution for any crime, whether or not related to the one immediately under consideration, by reason of a responsive answer.

ness, limited to a fine of $30 and imprisonment for 24 hours, and provides in addition for *coercive* imprisonment of the person so long as he continues so to refuse, not extending beyond the time of final disposition of the case in which he has refused to testify. We find nothing in this statute to make either the punishment or the coercive imprisonment mutually exclusive of the other, and it appears that both could be invoked against a recalcitrant witness. We are of the opinion, however, that this statute is intended to be exclusive on the subject of punishment of a witness for contempt in refusing to answer a question, and forecloses the application of the general statutes dealing with punishment for contempt. Cf. Bloemer v. Turner, 281 Ky. 832, 137 S.W.2d 387; and Head v. Commonwealth, 165 Ky. 603, 177 S.W. 731. Thus we consider inapplicable to the instant case the provisions of KRS 432.-260, which expressly permit a circuit court, without intervention of a jury, to punish a contempt by a fine of not more than $30 and by imprisonment for no more than 30 hours, and which impliedly recognize the authority of the court, with a jury, to punish free of statutory limitation as to extent.

For the reasons just stated we shall confine ourselves, in passing on the validity of the amount of punishment imposed by the circuit judge in the instant case, to a consideration of the limitations imposed by KRS 421.140.

The question is whether the statutory limit on the extent of punishment so interferes with judicial power as to be unconstitutional.

■ The general rule is that any legislation that *hampers* judicial action or *interferes* with the discharge of judicial functions is unconstitutional. However the rule is subject to the qualification that the legislature may put *reasonable* restrictions upon constitutional functions of the courts, provided that such restrictions do not *defeat* or *materially impair* the exercise of those functions. See 16 Am.Jur. 2d, Constitutional Law, sec. 239, pp. 489, 490.

Kentucky has followed the general rule. In Burton v. Mayer, 274 Ky. 263, 118 S.W. 2d 547, in holding that this court had authority to provide for immediate issuance of a mandate despite a statutory direction that no mandate could issue until after 30 days, the court said (118 S.W.2d at 549):

"Section 109 of the State Constitution vests the 'judicial power' of the Commonwealth 'in the senate when sitting as a court of impeachment, and one supreme court (to be styled the court of appeals) and the courts established by this Constitution.' The separation of the judicial power from the executive power and the legislative power was not merely a matter of convenience. The three branches of government are co-ordinate and yet each, within the administration of its own affairs, is supreme. The grant of the judicial power to the courts carries with it, as a necessary incident, the right to make that power effective in the administration of justice under the Constitution. Capps v. Gore, 231 Ky. 185, 21 S.W.2d 266; Commonwealth ex rel., etc., v. Harrington, 266 Ky. 41, 98 S.W.2d 53; In re Sparks, 267 Ky. 93, 101 S.W.2d 194. Rules of practice and procedure are, fundamentally, matters within the judicial power and subject to the control of the courts in the administration of justice. The courts accept legislative co-operation in rendering the judiciary more effective. They deny the right of legislative dominance in matters of this kind. Dowling, 'The Inherent Power of the Judiciary,' Vol. XXI, American Bar Association Journal, page 635.

"So long as the rules of practice fixed by the Legislature accord with the proper and effective administration of justice, they should be, and they are, followed to the letter. No other rule will accord with the duty of each of the three

branches of government so to co-ordinate its administration as to carry into effect the purposes of the Constitution. Where, however, a situation arises in which the administration of justice is impaired or the general rules of practice are unworkable, the duty undoubtedly rests on the courts to draw upon the reserve of their inherent power, not in the assertion of a domination over other co-ordinate branches of government, but in co-operation with the legislative and executive branches to carry out the purposes of the Constitution."

The same holding was made in Commonwealth ex rel. Attorney General v. Furste, 288 Ky. 631, 157 S.W.2d 59. To the same effect is the statement in In re Stump, 272 Ky. 593, 114 S.W.2d 1094, that a statute undertaking to regulate disbarment and reinstatement of attorneys is binding on the courts only "if it does not invade the independence of the judicial department as a separate body of magistracy, sections 27 and 28, Constitution of Kentucky."

The power of the courts to punish for contempt is one of the powers inherently belonging to the judiciary. As said by this court in Crook v. Schumann, 292 Ky. 750, 167 S.W.2d 836, at 840:

"* * * As necessary to the due exercise of their functions, it was recognized at common law, and has been from time immemorial, that courts have the inherent power to enforce their processes and orders and so to attain the ends of their creation and existence. It may well be doubted whether the legislature could limit the authority of the courts respecting practice and proceedings since all of our courts are created by the Constitution and all judicial power is lodged in them, save and except the Senate in cases of impeachment. * * Therefore, it is recognized that the courts may go beyond the powers expressed or defined by the statutes. * *"
Further, in Levisa Stone Corporation v. Hays, Ky., 429 S.W.2d 413, at 417 and 418, we said:

"A court's power to punish for contempt goes far back into English history, although the precedent has been questioned. Goldfarb, The Contempt Power (page 24). That the judiciary does have such an inherent power is hardly open to question. 17 Am.Jur.2d, section 62 (page 62); Arnold v. Commonwealth, 80 Ky. 300, 44 Am.Rep. 480, 3 Ky.Law Rep. 784; Crook v. Schumann, 292 Ky. 750, 167 S.W.2d 836; Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622. Whether the legislature may properly impose limitations upon the exercise of this power is such a serious and delicate question that decisions from other jurisdictions form a most variegated pattern. See Thomas, Problems of Contempt of Court, chapter 6 (page 47); 121 A.L.R. 215; and State ex rel. Oregon State Bar v. Lenske, Oregon, [243 Or. 477,] 407 P.2d 250. Goldfarb, The Contempt Power, is a book devoted to the proposition that it is necessary for many reasons that there be a limitation of some kind upon the exercise of this power.

"In Kentucky this question was first raised in 1874 in In re Woolley, 74 Ky. (11 Bush) 95. There the respondent was proceeded against by rule for what constituted a criminal contempt of the Court of Appeals. Since the court fined the respondent only $30, it was unnecessary to decide if the legislature under an earlier statute similar to the one under consideration could so limit the judicial power. However, the opinion expressed serious doubts concerning the statute's constitutionality, even with respect to criminal contempts. Arnold v. Commonwealth, 80 Ky. 300, 44 Am.Rep. 480, 3 Ky.Law Rep. 784, likewise involved criminal contempt. There a jury was impanelled and a fine of $1,000 was imposed. The opinion questioned the right of the legislature to regulate the imposition of punishment for contempt but since the respondent had been given a jury trial, it was unnecessary to decide the question.

"Crook v. Schumann, 292 Ky. 750, 167 S.W.2d 836, involved civil contempt. It was held the statute under consideration did not prevent the court from imposing penalties other than a fine or imprisonment for contemptuous disobedience of its order. This apparently involved a construction of the statute, although the opinion expresses doubt that the legislature could constitutionally restrict the power of the court to enforce its orders.

"Teamsters Local U. No. 783 v. Coca-Cola Bottling Co., Ky., 418 S.W.2d 228, was likewise a case of civil contempt. Therein it was held that, assuming the statute was a constitutionally valid limitation on the power of a circuit court, it was not violated by the imposition of several $30 fines against a person whose acts had constituted a series of violations of a temporary injunction. Again in that opinion was the constitutionality of KRS 432.260(1) questioned.

"If we construe this statute as relating only to criminal contempts, which was the apparent intention of the legislature, it is again unnecessary, as in the foregoing cases, to determine whether the legislature could, within constitutional bounds, regulate or limit the inherent and necessary power of a court to coerce compliance with its orders by imposing punishment or invoking other measures. This course we are inclined to take. * * * "

■ The statute here in question, KRS 421.140, is of most ancient origin, having its source in Section 598 of the 1854 Code of Practice for Kentucky. For 117 years the limits of $30 and 24 hours have remained the same, and during that time the courts have accepted those limits as not constituting a material interference with the exercise of judicial functions. But times have changed. Some elements of our society are fomenting disrespect for the courts and encouraging contemptuous conduct. The courts are confronted with a serious threat to the structure of our system of justice. Dollar and time limits suitable for conditions of the previous century are not adequate for the conditions of today. The limits prescribed by KRS 421.140 do now materially interfere with the administration of justice, and we therefore find the limits to be unconstitutional.

■ We hold that the extent of punishment to be imposed upon a recalcitrant witness is a matter within the reasonable discretion of the trial court (except where a *jury* trial is required under Bloom v. State of Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522), which discretion is reviewable by this court. We do not find it necessary at this time to decide whether that review may be obtained by *appeal*, on the theory that the bar of KRS 21.060(1) (c) against appeals from judgments punishing contempts was predicated upon the existence of *statutory* limits on the extent of such punishment. Cf. Levisa Stone Corporation v. Hays, Ky., 429 S.W. 2d 413. Under the circumstances of the instant case we think it was appropriate for the review to be sought by an original proceeding in this court. We have given review and we find that there was no abuse of discretion here.

The temporary order of prohibition heretofore issued herein is dissolved, and the petition for a permanent order is denied.

MILLIKEN, C. J., and NEIKIRK, OSBORNE, PALMORE and STEINFELD, JJ., concur.

EDWARD P. HILL, Jr., J., does not concur in so much of the opinion as invalidates the statutory limit on punishment for contempt.

REED, J., did not sit or participate in the decision.