**Linda K. MILLER, Appellant,**

v.

**Charles VETTINER et al., Appellees.**

Court of Appeals of Kentucky.

May 12, 1972.

Ed P. Jackson, Jr., Henry B. Sadlo, Louisville, for appellant.

Frank E. Haddad, Jr., Edith Stanley, Edwin I. Baer, Eugene Alvey, Louisville, for appellees.

PALMORE, Judge.

In a civil proceeding brought by Charles Vettiner individually and as Director of the Louisville and Jefferson County Metropolitan Park and Recreation Board against certain officials of the county and city a subpoena duces tecum was served on the appellant, Mrs. Linda Miller, the board's bookkeeper and finance commissioner, to produce various financial records of the board. She failed to produce some of these records and was fined $500 for contempt of court. She appeals from the trial order adjudging her in contempt and imposing the fine.

Despite a great deal of evidence the facts are relatively simple. Mrs. Miller testified that she had delivered the missing records to the city's Director of Finance before receiving the subpoena and therefore did not have them. Other testimony, however, would warrant a conclusion that the missing records were not among the papers she delivered to the Director of Finance, in which event they must have been lost or destroyed or were still in her possession. Following a hearing conducted for the purpose of enabling Mrs. Miller to purge herself of contempt the trial court found as a fact that she had the missing records in her possession when the subpoena was served. This factual conclusion was the basis for the order punishing Mrs. Miller by a $500 fine for contempt of court in failing to produce them.

KRS 421.110 declares disobedience of a subpoena to be a contempt of court. KRS 421.140 limits the punishment for such a contempt to a fine not exceeding $30 and imprisonment not exceeding 24 hours. These statutory limits were, however, held unconstitutional in Arnett v. Meade, Ky., 462 S.W.2d 940, 948 (1971).[1]

No question has been raised as to whether the judgment is appealable as a matter of right. KRS 21.060(1) (c) excepts (from the right of appeal) judgments punishing contempts, but it was held in Levisa Stone Corp. v. Hays, Ky., 429 S.W.2d 413, 415, 33 A.L.R.2d 581 (1968), that this statute applies only to criminal contempts. Though counsel on both sides assume that the type of contempt involved here is purely civil, the *Levisa Stone Corp.* opinion specifically says that KRS 421.140 and other statutes cited in the discussion relate to criminal contempts. 429 S.W.2d at p. 417. Nevertheless, in the more recent *Arnett* case it was recognized that the bar of KRS 21.060(1) (c) against appeals from judgments punishing contempts may have been predicated on the existence of statutory limits on the extent of such punishment. 462 S.W.2d at p. 948. If so, the inference is that invalidation of the limitation might have the effect of nullifying the exception made by KRS 21.060(1) (c). The very fact that an original proceeding was entertained in *Arnett* would suggest that the judgment in that case was not appealable, but we expressly declined to say so. *Ibid.*

■ Since it has been clearly established that civil contempts do not come within the statutory denial of an appeal, and since a principal reason for that construction seems to lie in the fact that there is no fixed limitation on the extent of punishment for civil contempt, the same logic by which it is held that the statute does not

apply to civil contempts suggests that it does not apply to any contempts, civil or criminal, for which there is no statutory limitation on the amount of punishment. We so hold, but without necessarily precluding the possibility of original proceedings in this court upon appropriate grounds such as inadequacy of the appellate remedy.[2]

■ The ground upon which Mrs. Miller contends the judgment is improper is that "contempt proceedings do not lie for perjury except where the truth of the facts or the falsity of the evidence is judicially known." Wilder v. Sampson, 279 Ky. 103, 129 S.W.2d 1022, 1024 (1939). See also Riley v. Wallace, 188 Ky. 471, 222 S.W. 1085 (1920), and Russell v. Field, 192 Ky. 262, 232 S.W. 375 (1921). The appellees, on the other hand, point out that Mrs. Miller was found in contempt not for giving false testimony, but for failing to obey the subpoena. We are of the opinion that this is a distinction without a difference. In order to find that Mrs. Miller disobeyed the subpoena the trial court had to find that her testimony to the effect that she did not have the records was false. Under the rationale of the precedents holding that she cannot be held in contempt for false swearing there is logic in the argument that she is entitled to the procedural protections of a criminal trial on this charge. To inflict punishment for a contempt that is dependent on the premise that the party allegedly in contempt is not telling the truth is to do indirectly what the law says cannot be done directly. It amounts to one and the same thing.

According to Goldfarb, the long and tortuous effort of the courts to classify contempts as "civil" or "criminal" has been a fruitless search for the impossible. Goldfarb, The Contempt Power 49 et seq.

1. It would seem to be a necessary concomitant of this decision that disobedience of a subpoena is a contempt of court regardless of the statute because, if it were a contempt only by virtue of statute, surely the power to abolish the offense

by repealing the statute would embrace the power to limit the punishment as the legislature sees fit.

2. Including, for example, inability to provide bail.

(1963). In the instance of our own court the differentiation ordinarily has arisen out of the necessity of determining whether various statutes relating to the right of appeal, the right of bail, or the extent of punishment are applicable. Cf. Levisa Stone Corp. v. Hays, Ky., 429 S.W.2d 413, 418, 33 A.L.R.2d 581 (1968). Under the circumstances it is not surprising that the ensuing classification appears sometimes to have been dictated by the end result thought to be most desirable.

Unquestionably many contempts, under any definition, involve both civil and criminal aspects. *Ibid.* This case is an example. The object of the subpoena was to aid a litigant, but a principal object of the punishment was to vindicate the authority of the court. The important distinction to be drawn, it seems to us, is between those contempts for which a person cannot be jailed or fined without a jury trial and those for which he can. When a person is fined or put in jail the end result is the same (except, perhaps, for the stigma that attends a criminal conviction) whether the offense be labeled a contempt or a crime and whether, if a contempt, it is "civil" or "criminal".

As mentioned above, the reason contempt proceedings usually do not lie for perjury is that the court cannot take judicial notice that the testimony in question was false unless, for example, the offender admits it. The same circumstance exists when a person charged with violating an injunction, or other court order, controverts the factual basis for the charge. Yet it has been customary in those cases for equity courts to exercise contempt power on the basis of show-cause hearings not held in conformity with the due process standards of criminal proceedings. Cf. Gibson v. Rogers, 270 Ky. 159, 109 S.W.2d 402 (1937); Jones v. Com., 308 Ky. 233, 213 S.W.2d 983 (1948); and

Armstrong v. Bryan, Ky., 273 S.W.2d 835 (1954). We are of the opinion that there is no sound reason for perpetuating this distinction.

It was held in Bloom v. Illinois, 391 U. S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), that the Sixth Amendment right to a jury trial applies to criminal contempt proceedings in which the offense has been equated with a "serious" crime by virtue of the extent of punishment authorized by statute. Apparently where there is no statutory limit the punishment actually imposed provides the criterion of whether the offense is "serious" or "petty." Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L. Ed.2d 629 (1966); Bloom v. Illinois, supra. In the case before us there is no longer any statutory limit.[3] Arnett v. Meade, Ky., 462 S.W.2d 940, 948 (1971). Hence the amount of the fine is determinative, and a $500 fine is not enough to equate the offense with a "serious" crime. Cf. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

To recapitulate, what we are holding is that when the existence or nonexistence of a contempt, civil or criminal, requires the resolution of a factual issue the trial court may itself resolve that issue upon the basis of a hearing in which the alleged offender is afforded a fair opportunity to present a defense, but may not in such a case inflict a fine greater than $500 and incarceration for more than six months except upon the unanimous verdict of a jury finding the offender guilty beyond a reasonable doubt. We do not deal with cases in which the contempt is committed in the immediate presence of the court or in which the factual basis for the finding of contempt is otherwise conclusively established, except to point out that in such cases it is imperative, incident to the right of appeal, that the facts be shown by a proper record.

3. It may be, though it has not thus far been so decided by this court, that no statutory limit on the extent of punishment for a true contempt is binding on the courts.

Since the punishment decreed in this case does not bring the contempt within the classification of serious offenses the judgment was not improper.

The judgment is affirmed.

All concur.