**A.W., A Child Under Eighteen, Appellant,**

v.

**COMMONWEALTH OF KENTUCKY, Appellee.**

**No. 2003–SC–000424–DG.**

Supreme Court of Kentucky.

March 17, 2005.

As Modified on Denial of Rehearing June 16, 2005.

Timothy G. Arnold, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Robert E. List, Assistant Campbell County Attorney, Covington, Gregory D. Stumbo, Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

This is an appeal from the Court of Appeals, which upheld the Juvenile Court's exercise of contempt powers as punishment for violations of conditions of probation; yet reversed the contempt sentence due to the absence of several due process safeguards during the hearing.

A.W., a fourteen-year-old juvenile, was adjudicated a public offender on March 21, 2001 by the Campbell District Court, juvenile session, and given a thirty (30) day detention sentence, probated with conditions—two of which where "to abide by a nightly curfew" and "to receive no new charges." Less than two months later, in May of 2001, A.W. was charged with an additional count of Harassment. Then again, on June 24, 2001, the Department of

Juvenile Justice (DJJ) filed an affidavit that A.W. had failed to abide by her curfew.

The matter was set for hearing the next day, at which time, A.W., and her counsel, were advised by the court the hearing would be a contempt hearing regarding her violations of probation. A.W. did not speak at the hearing; rather her counsel stated he had reviewed the DJJ's affidavit with A.W. and while A.W. "does not admit each ...allegation..., she substantially admits...the contempt." The record does not reflect the consequences of any admission to the DJJ's allegations were ever explained to A.W. by the court.

Following the colloquy between A.W.'s counsel and the court, A.W. was held in contempt and sentenced to sixty (60) days detention, all but fifteen (15) of which were probated for two years. Appellant then appealed the Juvenile Court's Judgment to the Campbell Circuit Court, which affirmed, holding the juvenile code "compelled" a contempt finding. Thereafter, the Court of Appeals granted Discretionary Review and rendered it's Opinion, acknowledging the validity of contempt proceedings in juvenile proceedings, but reversing on a finding that "the procedures which the court followed...did not comply with her substantive due process rights."

For reasons set out hereinafter, we affirm the Court of Appeals in its decision.[1]

■ A.W. first contends the juvenile court erred in finding her guilty of contempt for violation of conditions of probation, as opposed to revoking her probation. We disagree. The Appellant cites several well reasoned decisions which support her

argument. However, we are not dealing with adult sentencing, rather a very specific Kentucky Juvenile Justice Code, which as the Court of Appeals properly observed, is replete with references to, and authority for, the appropriate use of the court's inherent contempt powers in connection with the juvenile court's enforcement of its orders. KRS 610.010(10) specifically acknowledges that "(n)othing in this chapter shall prevent the District Court from holding a child in contempt of court to enforce valid orders previously issued by the court." Conditions of probation are orders of the court. See also, KRS 600.060.

■ The Appellant also suggests her conduct and failure to obey the probation order were not of such magnitude as to threaten the court's authority, or such that would tend to bring the court into disrepute, suggestively asserting this to be the sole standard for the appropriate exercise of contempt powers by a court. However, the standard is much broader than suggested. "Unlike the general authority to govern the course of a court proceeding, (the) contempt power may be used to regulate a party's out-of-court behavior.... Although a contempt proceeding is designed for the vindication of the dignity of the court ... another purpose... is to persuade a contemnor to do what the law requires." 17 C.J.S. *Contempt* § 2.

■ The Juvenile Code simply does not allow a court to give up on the rehabilitation of a juvenile who refuses to perform the terms of probation. Thus, the contempt power exists for the purpose of compelling the juvenile to comply with the court's orders and to enable the court to

1. The "cautionary dicta" in the Court of Appeals decision regarding the timing and use of a juvenile court's contempt powers, as well as the opinion of the court as to violations of due process, were not considered since they were

not before us. CR 76.21(1), and *Green River Dist. Health Department v. Wigginton*, 764 S.W.2d 475, 479 (Ky.1989), *overruled on other grounds, Withers v. U.K.*, 939 S.W.2d 340 (Ky. 1997).

help the juvenile become a productive citizen. "KRS Chapter 635 shall be interpreted to promote the best interests of the child through providing treatment and sanctions to reduce recidivism and assist in making the child a productive citizen...." KRS 600.010(2)(e). Nor can it be said that the imposition of contempt sanctions for violations of specific conditions of probation, violates the Appellant's due process rights of fair treatment and/or double jeopardy. See, *Butts v. Commonwealth*, 953 S.W.2d 943 (Ky.1997), and *Commonwealth v. Burge*, 947 S.W.2d 805 (Ky.1997).

■ The second question is whether or not the Juvenile Court, in the exercise of its contempt powers, was bound by the detention limitations of forty-five (45) days for public offenses (for fourteen-year-olds) as set out in KRS 635.060(4). To answer this question, we again turn to Kentucky's Juvenile Justice Code.

■ Concededly, KRS 635.060's purpose is to limit the length of any sentence a juvenile court may set at "dispositional hearings" for "public offense" cases. KRS 600.020(46), however, defines "public offense" as "an action, excluding contempt...." KRS 600.060 further provides, "Notwithstanding any other provision of KRS Chapter 600 to 645, the inherent contempt powers of the court shall not be diminished." Clearly then, since the court below was not setting a sentence at a "dispositional hearing" for a "public offense," KRS 635.060 could not be a limitation on the court's inherent powers of contempt. A contempt sanction in a contempt hearing for the violation of the court's order is certainly distinguishable from a sentence set at a dispositional hearing for a public offense. Were it otherwise, "The general rule is that any legislation that hampers judicial action or interferes with the discharge of judicial functions is unconstitutional." *Norton v. Commonwealth*, 37

S.W.3d 750, 754 (Ky.2001). That is, unless comity is granted. See, *Foster v. Overstreet*, 905 S.W.2d 504 (Ky.1995). Being an acknowledgment of the right of the courts to protect their inherent power, KRS 600.060, removes from question any limitations on such powers in this instance.

Based upon the foregoing, it is the opinion of this Court that KRS 635.060 does not act as a limitation on the length of sentence a juvenile court may impose in the appropriate exercise of its inherent contempt powers for violation of its orders.

Therefore, to the extent reviewed herein, the opinion of the Court of Appeals is affirmed.

LAMBERT, C.J., GRAVES, JOHNSTONE, SCOTT and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion, with KELLER, J., joining that dissent.

Dissenting Opinion by Justice COOPER.

Today's majority opinion permits a trial court, under the pretext of exercising its contempt powers, to (1) increase a defendant's punishment *post hoc* because the defendant violated a condition of probation and (2) circumvent the explicit maximum sentences authorized by the Unified Judicial Code, specifically KRS 635.060. Because I believe a trial court's contempt powers should be narrowly defined and employed only when no other remedy is available, I respectfully dissent.

In *Hord v. Commonwealth*, 450 S.W.2d 530 (Ky.1970), our predecessor court held that to increase a defendant's punishment upon revocation of probation is "repugnant to the spirit, if not the letter, of the Federal and State Constitutions on [grounds of] former jeopardy, speedy trials, and due process." *Id.* at 531. In this case, the

juvenile court did exactly that, increasing A.W.'s potential confinement from thirty to sixty days. By labeling A.W.'s wrongdoing as "contempt of court," instead of a "probation violation," the juvenile court accomplished indirectly what it could not do directly. *Blasi v. Blasi*, 648 S.W.2d 80, 82 (Ky.1983) (Leibson, J., concurring) ("[C]ourt has no power to do indirectly what it cannot do directly"). The fact that A.W. is a juvenile and not an adult is of no consequence. Juveniles are entitled to the same constitutional protections and fundamental fairness as adults. *Application of Gault*, 387 U.S. 1, 30, 87 S.Ct. 1428, 1445, 18 L.Ed.2d 527 (1967) (juvenile court delinquency "hearing must measure up to the essentials of due process and fair treatment"); *W.M. v. State*, 437 N.E.2d 1028, 1034 (Ind.Ct.App.1982) (juvenile court cannot use its contempt power to incarcerate a juvenile guilty only of a status offense).

Not only did the juvenile court increase the sentence for the underlying offense, it also increased the sentence beyond the maximum authorized by the General Assembly. "The power to define crimes and assign their penalties belongs to the legislative department." *Hoskins v. Maricle*, 150 S.W.3d 1, 11 (Ky.2004). KRS 635.060(4) expressly sets out the options a court has in the disposition of a case dealing with a public offender between the ages of fourteen and sixteen. A court may, *inter alia*, order confinement, "for a period of time not to exceed forty-five (45) days," KRS 635.060(4), and that limitation applies no matter how many offenses the child committed. *Cf. Commonwealth v. W.E.B.*, 985 S.W.2d 344, 345 (Ky.1998) (child over sixteen years of age could be sentenced under KRS 635.060(5) to no more than ninety days confinement no matter how many offenses child committed). The statute contains no option allowing the court to increase the maximum penalty by denominating one or more offenses as "contempt of court." *See Commonwealth v. Harris*, 59 S.W.3d 896, 900 (Ky.2001) ("A general rule of statutory construction provides that the enumeration of particular items excludes other items that are not specifically mentioned."). Nevertheless, the court imposed a sixty-day sentence, thirty days in excess of that imposed for the underlying offense and fifteen days in excess of that permitted by the statute.

While this is a case of first impression in Kentucky, the overwhelming majority of jurisdictions that have considered this issue have concluded that holding a defendant in contempt of court for violating conditions of probation offends fundamental principles of fairness. *E.g., Alfred v. State*, 758 P.2d 130, 132 (Alaska Ct.App. 1988) ("When a defendant violates a condition of probation, we believe that fairness requires that the court adhere to the terms of its agreement, and conduct a probation revocation hearing, not a contempt hearing."); *Jones v. United States*, 560 A.2d 513, 516 (D.C.1989) ("[T]he only appropriate sanction [for a violation of probation] is a withdrawal of the previously afforded favorable treatment rather than the imposition of an additional penalty."); *Williams v. State*, 72 Md.App. 233, 528 A.2d 507, 508 (1987) ("When a probationer violates a condition of his probation, he is not subject to an additional punishment for that violation; but rather to the forfeiture of his conditional exemption from punishment for the original crime."), *superseded by statute with regard to restitution orders only as recognized by, Songer v. State*, 88 Md.App. 221, 594 A.2d 621, 622 (1991); *State v. Williams*, 234 N.J.Super. 84, 560 A.2d 100, 104 (App.Div.1989) ("Contempt of court should not be superimposed as an additional remedy in a probation violation setting if the act that occa-

sions the violation itself is not otherwise criminal.").

The rule has been premised on several well-reasoned bases, some courts stressing the purpose of probation with others utilizing a contract-type rationale. In *Williams v. State,* the court noted that probation was not a penalty but a conditional exemption from punishment with an eye toward rehabilitation. 528 A.2d at 508.

> Probation ... permits a court, in its discretion, to suspend what would be the normal penalty for violation of the criminal law in favor of conditions which, if performed, tend to promote the rehabilitation of the criminal as well as the welfare of society.... [T]he criminal defendant is given a second chance—an opportunity to show that by performing the conditions of probation he can function as a law-abiding and useful member of society....

> If, however, the defendant fails to perform the conditions of probation he may forfeit the benefits of probation. *In such a case ... the original sentence is the only true punishment;* the probation revocation is merely the withdrawal of favorable treatment previously afforded the defendant.

*Id.* (emphasis added) (internal citations and quotations omitted). Rehabilitation is also a primary objective of the juvenile justice system. KRS 600.010(2)(e) ("KRS Chapter 635 shall be interpreted to promote the best interests of the child through providing treatment and sanctions to reduce recidivism and assist in making the child a productive citizen by advancing the principles of personal responsibility, accountability, and reformation, while maintaining public safety, and seeking restitution and reparation."); *See also* KRS 605.100; *Gault,* 387 U.S. at 15–16, 87 S.Ct. at 1437 (explaining the underlying theory behind the juvenile justice system: "The

idea of crime and punishment was to be abandoned. The child was to be 'treated' and 'rehabilitated' and the procedures ... were to be 'clinical' rather than punitive."). Thus, the principle that "the original sentence is the only true punishment" for a probation violation applies even more so to a juvenile.

This rule can also be soundly based on a contract-type rationale. The court in *Williams* also articulated that "[b]ecause probation involves a conditional exemption from punishment, rather than a part of the penalty, a court may condition probation upon acts or omissions which it otherwise lacks the authority to impose." 528 A.2d at 508. In this case the trial court relinquished its authority to immediately impose the thirty-day sentence of confinement in exchange for A.W.'s agreement to accept substantial restrictions on her liberty, *i.e.,* not to violate a court-imposed curfew or to fight with her siblings. As such, probation agreements are in effect a "bargain... whereby [the convicted individual] is in essence told that if he complies with the requirements of probation, he may become reinstated as a law-abiding member of society." *People v. Chandler,* 203 Cal. App.3d 782, 250 Cal.Rptr. 730, 733 (1988). As part of the bargain the defendant is informed that if he or she fails to comply with the requirements of probation, the favorable treatment previously afforded will be withdrawn and the punishment previously withheld will be imposed. *Id.* To allow a court to subsequently impose a greater sentence than was originally imposed effectively permits the court to secure an agreement on false pretenses. *Alfred,* 758 P.2d at 132 ("fairness requires that the court adhere to the terms of its agreement, and conduct a probation revocation hearing, not a contempt hearing").

The majority opinion does not dispute that an adult cannot be held in contempt of

court for violating a condition of probation, noting that the cases cited by Appellant are "well reasoned decisions." *Ante,* at 6. Instead, the majority distinguishes this case based on the fact that it involves a juvenile and a "very specific Kentucky Juvenile Justice Code ... which ... is replete with references to, and authority for, the *appropriate* use of the court's inherent contempt powers ...." *Ante,* at 6 (emphasis added). The issue, of course, is whether it is *appropriate* upon a probation violation to use the court's inherent contempt powers to substitute a new and greater punishment for the punishment that was probated.

KRS 600.060 simply states: "Notwithstanding any other provision of KRS Chapter 600 to 645, the inherent contempt power of the court shall not be diminished." This provision is but a recognition by the General Assembly that it has no power to diminish the authority of the courts over judicial matters such as contempt. "The general rule is that any legislation that hampers judicial action or interferes with the discharge of judicial functions is unconstitutional." *Arnett v. Meade,* 462 S.W.2d 940, 946 (Ky.1971). *See also Woods v. Commonwealth,* 712 S.W.2d 363, 365 (Ky. App.1986) (striking down legislation as overly restrictive of judicial contempt powers). The recitation of language in the Unified Juvenile Code, therefore, does nothing more than acknowledge that the General Assembly did not intend to limit the inherent contempt power of a juvenile court. It should not be construed as legislative encouragement of a court to abuse that power merely because the subject of that abuse happens to be a child. *Cf. Gault,* 387 U.S. at 13, 87 S.Ct. at 1436 ("[N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone.").

To understand *when* a court should use its contempt powers, it is necessary to understand the nature of contempt. Contempt falls into two categories: civil and criminal. *Gordon v. Commonwealth,* 141 Ky. 461, 133 S.W. 206, 208 (1911). "It is not the fact of punishment but rather its character and purpose, that often serve to distinguish between the two classes of cases." *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). Civil contempt is intended to coerce, rather than punish. *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). In *Commonwealth v. Burge,* 947 S.W.2d 805 (Ky.1996), we held:

> Civil contempt consists of the failure of one to do something under order of court, generally for the benefit of a party litigant. Examples are the willful failure to pay child support as ordered, or to testify as ordered. While one may be sentenced to jail for civil contempt, it is said that the contemptuous one carries the keys to the jail in his pocket, because he is entitled to immediate release upon his obedience to the court's order.

*Id.* at 808. A criminal contempt order, on the other hand, is designed to punish. *Burge,* 947 S.W.2d at 808.

> It seeks to punish conduct which has already occurred rather than to compel a course of action. It is the purpose of the punishment (rather than the fact of punishment per se) that distinguishes civil from criminal contempt. If the court's purpose is to punish, the sanction is criminal contempt. If the court's purpose is to goad one into action or to compel a course of conduct, the sanction is civil contempt.

*Commonwealth ex rel. Bailey v. Bailey,* 970 S.W.2d 818, 820 (Ky.App.1998). Criminal contempt is conduct "which amounts to an obstruction of justice, and which

tends to bring the court into disrepute." *Gordon,* 133 S.W. at 208.

It includes those acts done in disrespect of the court or its processes or which obstruct the administration of justice or tend to bring the court into disrepute. It covers not only acts which directly and openly insult or resist the powers of the court or the persons of judges, but to consequential, indirect, and constructive contempts which obstruct the process, degrade the authority, and contaminate the purity of the court.

*Mitchell v. Commonwealth,* 206 Ky. 634, 268 S.W. 313, 313 (1925).

The contempt order issued against A.W. was not issued "to persuade a contemnor to do what the law requires." Majority opinion, *ante,* at 6. It was issued to punish A.W. for violating her probation. A.W. did not "hold the keys to the jail in her pocket," for she could not undo her curfew violation as one can be coerced to testify or to surrender child support payments. The order was clearly one for criminal contempt.

A court's contempt power "is sparingly to be used." *Gompers,* 221 U.S. at 450, 31 S.Ct. at 501. "[O]nly the least possible power adequate to the end proposed should be used in contempt cases." *United States v. Wilson,* 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975) (internal citations and quotations omitted); *see also, Young v. United States ex rel. Vuitton et. Fils S.A.,* 481 U.S. 787, 800, 107 S.Ct. 2124, 2134, 95 L.Ed.2d 740 (1987). These principles of restraint exist to "ensure[ ] that the court will exercise its inherent power of self-protection only as a last resort." *Young,* 481 U.S. at 801, 107 S.Ct. at 2134. Certainly, it should not be used as a pretext to increase punishment beyond that authorized by the legislature for criminal conduct—especially when the offender is a child.

The act for which A.W. was punished was not one that obstructed justice, insulted the court, degraded its authority, or tended to bring the court in disrepute or contaminate its purity. She simply violated a condition of her probation. This curfew violation did not threaten the juvenile court's authority, for the court had available the appropriate legal remedy for a probation violation, *i.e.,* revocation of probation and application of the underlying penalty. Clearly, the juvenile court did not exercise proper restraint in the use of its contempt powers. Just as obviously, the court exceeded its authority by imposing a punishment that exceeded both that which had been previously imposed for the underlying offense and that which has been authorized by the legislature.

Accordingly, I dissent.

KELLER, J., joins this dissenting opinion.