COMMONWEALTH of Kentucky, Appellant,

v.

Jarrod L. NICELY, Appellee.

No. 2009–SC–000313–DG.

Supreme Court of Kentucky.

Nov. 18, 2010.

Jack Conway, Attorney General, David Bryan Abner, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellant.

Timothy G. Arnold, Department of Public Advocacy, Post Trial Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

This case presents the question whether a defendant who serves jail time as a sanction in a drug court program, where that program is a condition of probation, is entitled to custody credit for that jail time upon a revocation of his probation. This case also presents the subsidiary question whether an adult probationer can be held in contempt for probation violations. The Court of Appeals held such a defendant can be held in contempt and is entitled to credit only where the sanction is a result of a probation violation, and not a contempt finding. Nevertheless, the court found that the defendant in this case, Appellee, Jarrod L. Nicely, was entitled to jail time credit because proper contempt procedures were not followed. Although this Court disagrees with the Court of Appeals' reasoning regarding contempt in this case, because we agree that Appellee was entitled to jail time credit, we affirm.

## I. Background

Appellee was sentenced to five years in prison for trafficking in a controlled substance within 1000 yards of a school and to twelve months for trafficking in marijuana, less than eight ounces, with the sentences to run concurrently for a total of five years. He had been referred to drug court for assessment and was recommended for the program. The trial court suspended imposition of imprisonment and granted him probation for a period of five years. On December 1, 2005, the court entered an order of probation that included as conditions of probation that Appellee be supervised by the Department of Probation and Parole and "comply w[ith] Drug Court."

Appellee's case was then "transferred" to the trial court's "drug court docket" and he was placed in the drug court program.

He struggled there, and his addiction repeatedly got the better of him, resulting in numerous sanctions for program violations, most of which resulted in days in jail. Finally, after deciding that Appellee had been given more than enough opportunity to improve, the trial court "exited" him from the drug court program, ordered that a probation revocation hearing be held, and that probation and parole calculate his pretrial credit pursuant to KRS 532.120(3). A "presentence investigation report" was filed by probation and parole indicating that Appellee was entitled to 301 days of pre-imprisonment, jail-time credit, including the days he spent in jail on drug court sanctions.

The trial court refused to give Appellee credit for the days spent in jail due to drug court sanctions, stating first that there was "case" authority for the denial. The court eventually concluded that the drug court sanctions were imposed under its contempt powers and were not imposed because of Appellee's probation status. Consequently, the trial court reasoned that those days did not count toward custody credit, and allowed only 43 days custody credit for time served before sentencing.

Appellee appealed to the Court of Appeals, claiming that the trial court could not deprive him of any of the 301 days under the sentencing statutes, and could not exercise its contempt power to impose drug court program violations. The Court of Appeals held that a trial court can impose sanctions in a drug court program under either its contempt powers or as a probation violation. Under this approach, a defendant is not entitled to credit for a contempt sanction, but is entitled to credit for a probation violation sanction. However, the Court of Appeals stated that if the trial court proceeded under contempt, certain due process requirements had to be met. The Court of Appeals concluded that

Appellee was entitled to the full custody credit because those due process requirements had not been met.

The Commonwealth sought further appeal before this Court. As this case presents questions of first impression,[1] this Court granted discretionary review.

## II. Analysis

To address the issue before the Court, it is necessary to explain the nature of drug court, its relationship with probation and diversion programs, and the confusion of many terms associated with the program.

Stated simply, drug court is a treatment program that involves court participation in and enforcement of the program terms that may be offered to a criminal defendant with addiction problems as a *condition* of probation or a *term* of a diversion agreement between the defendant and the Commonwealth Attorney. Since the terms of probation are set by the trial court, whenever the terms of the drug court program are changed by the court requiring an act or imposing a sanction, this is a modification of the probation which can only be done by the court, and is thus a judicial act. However, the drug court program is not a formal court, in the sense of a regular court having a formal docket, but it does have an informal docket and is presided over, quite informally, by a judge. The *Kentucky Adult Drug Court Procedures Manual,* produced by the Administrative Office of the Courts in support of the drug court Administrative Procedures, describes it thusly, "Drug court is court-supervised and successfully combines a strong treatment component with the legal weight of law enforcement." Administrative Office of the Courts, Kentucky Court of Justice, *Kentucky Adult Drug Court Procedures Manual* 4 (Jan. 2008) [hereinafter *Procedures Manual*]. The "supervision" of the court requires judicial discretion in modifying the conditions of probation as needed during the program. Without this judicial authority, no jail time sanctions could be imposed. Local jailers would refuse to accept a defendant without a court order. Absent the legal requirements of probation review and modification, there is *no* authority to impose jail time sanctions, including as a contempt of court, contrary to the Appellant's argument. Under what authority would a judge order a defendant to jail if drug court were not a court function? However, it is a court function, clearly laid out as an alternative sentencing program under the applicable statutes.

Drug court began as a court program in the 1980s in Miami, Florida, in response to "skyrocketing costs of incarceration and the escalating number of drug-related arrests." *Id.* Using the supervisory power of the courts over addicted defendants, the local criminal justice system developed a program that combined mandatory drug treatment, frequent judicial review, random and frequent drug testing, and intensive case management. Kentucky followed suit some ten years later. *Id.* Independent research done by the University of Kentucky's Center on Drug and Alcohol Research (CDAR) has confirmed the startling success of the program: for program

---

1. This Court has previously addressed a similar question related to juveniles, whose criminal conduct is governed by the Unified Juvenile Code rather than the Kentucky Penal Code. *See A.W. v. Commonwealth,* 163 S.W.3d 4, 6–7 (Ky.2005). However, as the majority opinion noted, it was "not dealing with adult sentencing, [but] rather a very specific Kentucky Juvenile Justice Code." *Id.* at 6; *see also id.* at 9–10 (Cooper, J., dissenting) ("The majority opinion does not dispute that an adult cannot be held in contempt of court for violating a condition of probation...."). As such, the question whether an adult probationer can be held in contempt for probation violations is an open question.

participants, there is a 20.2% recidivism rate compared to a 57.3% rate for those who did not participate in the program. *Id.* This has resulted in a savings to the criminal justice system and medical expenses in the ratio of 5:1 for every dollar spent on drug courts, and the trickle-down savings from these defendants being self-supporting and paying child support, though not tracked, is substantial. *See id.* Per individual participant, a year in drug court costs less than one-fourth the cost of keeping a defendant in prison for one year. *Id.* at 5.

While no new statutes were enacted to establish the program, it is statutorily based in that the statutes which already gave the court system authority to act in regard to probation and diversion govern the program without need for further enactments. In cases involving probation, the program developed by the courts is aligned with KRS 533.020 and 533.030. In diversion, the program is aligned with KRS 533.250, 533.254 and 533.262. While the drug court program is the same for either a probation or diversion defendant, how it is accessed differs according to the requirements of probation versus diversion.

When a defendant enters the program through probation, the trial court will have accepted a guilty plea or the defendant will have been convicted by a jury. *See* KRS 533.020. At sentencing, the defendant's sentence is fixed at the appropriate term of years, but *service* of the sentence in the *penitentiary* is suspended, and the defendant is placed on probation for a term of up to five years. To this point, these are the simple mechanics of placing any defendant on probation.

However, if a defendant has been screened and found eligible to participate in drug court, *see Procedures Manual* at 10–11, the trial Court may choose to exer-

cise its discretion to make the successful completion of the drug court program the primary condition of the probation, provided the defendant is willing to participate. Drug court is a voluntary program, and requires the consent of the sentencing court and the defendant. The program requires a defendant to make several commitments to enter the program and avoid immediate incarceration. One of these commitments is a waiver of full hearing rights during program participation, which does not affect the participant's due process rights in a probation revocation hearing if for some reason he is exited from the program. *Procedures Manual* at 12.

■ Use of the drug court program as a condition of probation is in accord with KRS 533.020(2), which allows the court to sentence the defendant to an alternative sentence without imposition of imprisonment, when "probationary supervision alone is insufficient." This insufficiency arises most often when the defendant is severely addicted to drugs. The statute gives the sentencing court broad discretion in formulating the alternative sentence, and this became the enabling principle which led to the development of the drug court program by the Court of Justice. By combining treatment and supervision with the authority of the trial court to revoke probation, a very effective alternative sentence was designed, as demonstrated by the statistics referenced above. The ability to design the necessary probation terms and conditions is specifically granted to the trial court in KRS 533.030, which grants broad discretion to the court as well as provides a laundry list of possible conditions "in addition to any other reasonable condition" imposed by the court. If the defendant successfully completes the program, he has met the primary condition of his probation, and may be placed on conditional discharge for

the remainder of his probationary term, or remain on general probation supervision until the term is served. At that time, the defendant shall be deemed "finally discharged." KRS 533.020(4). The imprisonment part of the defendant's sentence will be imposed only if he fails to complete his conditions of probation and has his probation revoked.

Once the defendant has been alternatively sentenced to do his time in drug court rather than in prison, his case is transferred to a drug court docket, which is a docket where the drug court judge generally monitors the probation by having the defendant report to the court on a regular basis to have his progress reported. This allows the drug court judge to impose sanctions as punishment for relapses or other acts of bad judgment, or to simply "exit" or discharge the defendant from the program and set a probation revocation hearing. This monitoring is post-judgment, and consists of active review of a probated defendant's treatment program by the trial court. Rather than discharging defendant-participants for every violation and proceeding to revocation, drug court judges frequently require service of time in the local jail as a sanction. However, when a defendant is recalcitrant or resistant to treatment, he may forfeit the right to participate further in this alternative sentence, in the trial court's discretion, and be discharged from the program.

While the defendant is technically under the supervision of the Department of Probation and Parole during his referral to drug court, the department's involvement is usually minimal at this point, as it would be if a defendant were sent to another type of treatment program such as The Hope Center or Crossroads, two well-known treatment programs that are licensed by the state. *See* KRS 439.480.

However, when a defendant is discharged from the program, his probation officer becomes more actively involved, and will be present at the revocation hearing and will be responsible for providing the court with the number of days a defendant has spent in local custody prior to being revoked and having the imprisonment part of his sentence imposed. The probation officer informs the court of the number of days in a revised presentence investigation report. KRS 522.050(2).

The dissent in this case expresses concern that drug courts are not a court of record. To the contrary, every action taken as a sanction in a drug court program by the court is filed in the record as a written order, which is proven by the record in this case. The court must enter a commitment order before the defendant can be admitted to the jail. *Only* a court can order a defendant to jail, and the court only has the authority to do so *at all* because there is a legal basis allowing imposition of jail time. For a drug court violation, that is a violation of the terms of the participant-defendant's probation, which the court decides to modify rather than revoke.

The dissent also expresses concern that a drug court sanction cannot be a modification of probation because the elements of due process normally accorded a defendant at a probation revocation hearing are not followed. For example, the defendant appearing before the drug court judge usually does not have counsel. However, defendants who enter drug court waive those rights while in the program, and upon discharge from the program, the defendant retains all those rights at any revocation hearing that follows.

The issue in this case involves the time spent in local jails as sanctions from the drug court judge for program violations. The question is whether this time

should be counted as time served as punishment within the drug court program under the trial court's contempt powers, or as time served toward a sentence of imprisonment once the defendant's probation is revoked and he is ordered to prison.

At the heart of this question is the query, "What is a sentence?" When a defendant is convicted or pleads guilty, the trial court then sentences him to a fixed term of years, though we say it is indeterminate because of various ways the term can be shortened by operation of law. As an alternative to a sentence of imprisonment, a court, under certain circumstances, "may sentence such person to a period of probation." KRS 532.040. In such cases, the trial court is actually sentencing the defendant to probation with conditions, as evidenced by the statutes' repeated use of the language "a sentence of probation." *E.g.*, KRS 532.040, 533.030(2). Also part of a sentence of probation is a term of years of imprisonment, service of which is suspended during the pendency of the probation (for a period of time not to exceed five years). One way to think of a sentence of probation is that it is a conditionally suspended term of imprisonment. If the defendant successfully completes probation, then he is finally discharged, and will not have to serve the term of imprisonment. On the other hand, if he fails to follow through on the conditions, then his probation can be revoked. At that time, the trial court imposes the part of the sentence that fixed a term of imprisonment and commits the defendant to that imprisonment.

Though the defendant was sentenced to this term of years on his original sentencing date the imprisonment did not "commence" at that time because it was suspended in favor of probation. When the defendant is revoked, he does not get a new sentence; he merely has the imprison-

ment part of the sentence imposed. This follows from KRS 532.120(2), which states, "A definite sentence of imprisonment commences when the prisoner is received in the institution named in the commitment." This statutory language makes it clear that a *sentence* of imprisonment does not *commence* until the defendant is received in a prison. The next subsection goes on to require that *any* time served before "commencement" be counted toward the sentence of imprisonment:

> Time spent in custody prior to the *commencement* of a sentence as a result of the charge that culminated in the sentence shall be credited by the court imposing sentence toward service of the maximum term of imprisonment. If the sentence is to an indeterminate term of imprisonment, the time spent in custody prior to the commencement of the sentence *shall* be considered for all purposes as time served in prison.

KRS 532.120(3) (emphasis added). It is obvious that these two sections, both part of the same statute, are meant to be read together, and that "commencement of a sentence" as used in the latter section is defined by the prior. Thus any time served "as a result of the charge that culminated in the sentence" must be counted toward "service of the maximum term of imprisonment." Since a sentence of imprisonment is further indeterminate, any time spent in custody prior to commencement of imprisonment must be considered as time served in prison.

There is some debate whether drug court sanctions served in jail are as a result of the underlying crime. One argument is that the jail time is for violation of a drug court program rule, and that it does not relate to the underlying crime. However, this is no different than days spent in jail during regular probation when a defendant has committed an infraction that

the trial court does not deem sufficient for revocation, but requires a sanction in the form of service of days in jail. In either case, the defendant would not be subject to the court imposing jail time but for the underlying conviction that allowed him to be placed on probation. The trial court has specific statutory authority to modify the terms of probation, *see* KRS 533.020(1), which may include "a period of imprisonment in the county jail," KRS 533.030(6). Since probation generally means that the defendant is not in custody, the only authority a trial court has to place him in custody is to revoke probation, and order commencement of the sentence of imprisonment, or to modify the conditions of probation to include a period of incarceration in the local jail. Without such statutory authority, a court has no power to incarcerate a person without an underlying criminal conviction, except for contempt.

■ However, when a statutory provision governs, a court must apply that law rather than its inherent power of contempt. Arguably, any time a defendant violates a court order, he is subject to contempt proceedings. But when the legislature has prescribed standard provisions meant to apply to all defendants, it is not sound policy to resort instead to the individualized view of the court exercising its contempt power, which necessarily excludes the operation of the statute that governs. The better approach is embodied by the rule applied by a majority of states to this type of situation:

> [T]he overwhelming majority of jurisdictions that have considered this issue have concluded that holding a defendant in contempt of court for violating conditions of probation offends fundamental principles of fairness. *E.g., Alfred v. State*, 758 P.2d 130, 132 (Alaska Ct.App. 1988) ("When a defendant violates a condition of probation, we believe that fairness requires that the court adhere to the terms of its agreement, and conduct a probation revocation hearing, not a contempt hearing."); *Jones v. United States*, 560 A.2d 513, 516 (D.C.1989) ("[T]he only appropriate sanction [for a violation of probation] is a withdrawal of the previously afforded favorable treatment rather than the imposition of an additional penalty."); *Williams v. State*, 72 Md.App. 233, 528 A.2d 507, 508 (1987) ("When a probationer violates a condition of his probation, he is not subject to an additional punishment for that violation; but rather to the forfeiture of his conditional exemption from punishment for the original crime."), *superseded by statute with regard to restitution orders only as recognized by, Songer v. State*, 88 Md.App. 221, 594 A.2d 621, 622 (1991); *State v. Williams*, 234 N.J.Super. 84, 560 A.2d 100, 104 (App.Div.1989) ("Contempt of court should not be superimposed as an additional remedy in a probation violation setting if the act that occasions the violation itself is not otherwise criminal.").

*A.W. v. Commonwealth*, 163 S.W.3d 4, 8–9 (Ky.2005) (Cooper, J., dissenting).

The Appellee would not have been in drug court, and consequently would not have served sanctions in jail, without the underlying criminal conviction. Other treatment programs may impose sanctions for violations of their rules, but *none* of them has the power to incarcerate. Only the trial court, through its power to modify, rather than revoke, probation, may deprive a defendant of his liberty. And if the trial court does not think the defendant should continue at liberty due to violations, it has the power to revoke and impose incarceration in the penitentiary. These powers are granted by statute, rather than being inherent to protect the digni-

ty and authority of the court, and when such statutory enactments specify what the court may do, the court should follow them, rather than relying on its inherent power.

■ This does not mean that the court has any less ability to sanction a defendant or any person appearing before the court for disrespectful or improper behavior which demeans the dignity of the court, including anyone on probation. However, drug court program violations, such as those seen here, are not personal to the court, nor directed to defiance of the court, but rather are part of the treatment of addiction. When a trial court determines that a drug court participant has had ample opportunity to improve but has failed to do so, the court is properly justified in discharging him from the program and setting a revocation proceeding. Such behavior, however, does not justify a separate contempt proceeding, which requires a finding that the defendant *intended* to hold the court in disrepute through his addiction failures, either because he could not or would not give up the use of drugs. Even if he is being revoked because he committed another crime, for which a separate punishment may be imposed in the future, it is not a matter of contempt of court but of a violation of our laws.

■■ The Court of Appeals is correct in saying that a defendant cannot be punished for both contempt and a violation of the law for the same behavior. However, this Court does not agree that the trial court has the option to find contempt rather than to apply the law of probation. The punishment that follows from modification or revocation of probation—namely, service of the underlying term of imprisonment, whether in part or whole—is sufficient to address the behavior that violated probation. A defendant on probation may be incarcerated as a modification of his existing probation, or because he has violated some other law, or because of independent, intentional behavior showing disrespect for the court, constituting civil or criminal contempt. In the latter, the court imposing contempt will have the burden to establish the reasons why the act of the defendant should be considered contempt rather than a violation of his probation, which would subject him to modification or revocation, if questions of custody credit arise.

The Appellee in this case is entitled to custody credit for the days he served as drug court program sanctions. The trial court modified his probation, rather than revoking him, in every instance in which days in jail were required. All the incarcerations were specifically tied to drug court program violations for drug use or drug-seeking behavior, not for any separate disrespect directed at the judge or the courts in general, as criminal contempt. They certainly could not be said to be in the nature of civil contempt, because the Appellee definitely did not hold the key to his cell door. His incarcerations were for specific periods of time, tied to a specific program violation.

### III.  Conclusion

■ Because drug court is a treatment program, monitored and enforced by the court, that is frequently used as the primary condition of probation with addicted defendants, the trial court has the authority to modify a defendant's probation rather than revoking him for program violations. This modification may include requiring the defendant to serve days in jail. Participating defendants in drug court specifically agree to the program, and are made aware before entering that they may be subject to such sanctions. Days served as modifications of probation are days served before the commencement of im-

prisonment, and are thus treated as time spent in custody pursuant to KRS 532.120(3). Consequently, the Appellee is entitled to custody credit against the maximum term of his sentence on the underlying offense for all the days he served as drug court sanctions. The Court of Appeals is affirmed, but on other grounds, and this case is remanded to the trial court for proceedings consistent with this Opinion.

MINTON, C.J.; ABRAMSON, SCHRODER, SCOTT and VENTERS, JJ., concur. CUNNINGHAM, J., dissents by separate opinion.

CUNNINGHAM, J., dissenting:

With great deference to the writing of Justice Noble, I respectfully dissent.

In speaking for the majority, she is correct in stating that the drug court program has been a resounding success. It is also correct for me to say that my sister on the bench, Justice Noble, deserves a great share of the credit for the establishment and success of this constructive program.

I furthermore agree with the majority in its reasoning and analysis of the contempt process utilized by the trial court in this case. However, I strongly disagree with the Court's holding that sanctions imposed by the drug court must be converted into credit on the sentence when the defendant's probation is revoked.

As effective as they have been in this state, there is still much confusion among the trial judges as to exactly the proper status of drug courts legally. And, of course, their status determines what laws apply as to their operation and functioning. I fear our holding here today will only further confuse members of the trial bench.

First of all, "drug court" is a misnomer. It is not a court. The majority admits this. Says Justice Noble: "Stated simply, drug court is a treatment program...." It is a supervisory and administrative arm of the court. But it is not a court of law. While proceedings in drug court may vary across the state, there are elements common to them all.

It is not a court of record. In fact, confidentiality pervades the entire drug court process. The public, including the jury which may have imposed it, has no clue that the sentence is being effectively reduced behind closed doors.

Defendants voluntarily participate in the program. The extent and purity of this "voluntariness" will vary greatly from one judge to another. Sometimes it is a choice of poisons. For others, it is truly a consensual involvement from which one may opt out at anytime without penalty.

Judges also voluntarily take part in the program. Drug court is not a mandated judicial function. The judges who establish and administer drug court do so of their own volition and good will.

In truth, the sanctions which the majority convert today as credit for a sentence set by a judge or jury are not even imposed by a duly constituted, authorized and mandated court. It takes place at a "session."

Our Supreme Court Amended Drug Court Rules of Administrative Procedure define "session" as "the scheduled appearance of the participant before the drug court judge, during which the progress of the participant is reviewed and incentives may be granted **or sanctions imposed.**" (Emphasis added.)

Two noteworthy items about this definition. It is not a court of law. There is not a criminal defendant, but a "participant."

There are no due process requirements.

No findings, written or otherwise, are required as in probation modifications.

There is no right to appeal from its proceedings.

At the sessions in drug court, where sanctions are imposed, the defendant does not have the right to counsel, nor is the Commonwealth required to be represented.

KRS 532.120(3) states: "Time spent in custody prior to the commencement of a sentence as a **result of the charge that culminated in the sentence** shall be credited by the court imposing sentence toward service of the maximum term of imprisonment." (Emphasis added.) Sanctions imposed by drug court are never the result of the charge for which a defendant pled guilty or was placed on probation. They are the result of the defendant being in a drug treatment program and deemed appropriate for treatment.

The majority analogizes these sanctions with confinement given for probation violations. There is a pivotal difference. First of all, changing the conditions of probation, including imposition of jail time, requires an open hearing in a court of law. KRS 533.050. That statute more specifically states: "The court may not revoke or modify the conditions of a sentence of probation or conditional discharge except after a hearing with defendant represented by counsel and following a written notice of the grounds for revocation or modification." KRS 533.050(2). We just recently emphasized the need for due process scrutiny in *Cameron Hunt v. Commonwealth,* 326 S.W.3d 437 (Ky.2010).

There is no hearing for imposition of sanctions. No witnesses are required. No right to confrontation. No right to counsel. No right against self-incrimination. No right to appeal. More impor-

tantly, as this case highlights, the Commonwealth has no right to appear or have any say as to the sanctions. If he or she attends, they do so only upon invitation from the judge. And, as previously stated, all is cloaked behind the veil of confidentiality.

In this case, the trial court showed tremendous patience and leniency with the troublesome Appellee. On July 21, 2005, Nicely pled guilty to trafficking in drugs. Even before Nicely was formally entered into drug court, a bench warrant was issued for him for failure to abide by "drug court policy." He was ordered to continue on probation and drug court. In January of 2006, Nicely was again arrested and placed in custody until early February, when he was released. Between April 7, 2006 and April 16, 2007—over a year—he was remanded to serve between 7 and 14 days on seven different times for violations of "terms and conditions" of drug court. Finally, in May 2007, his probation was revoked.

Of course, we have no record of those various remands for drug court violations. We know that neither the Commonwealth Attorney nor defense lawyer had any right to be present. The sweeping rule by the majority today will, in effect, allow our judges state wide to change judicial sentences without any benefit of the adversarial system where both the interest of the defendant and society can be guarded.

It is unfair to allow Nicely credit for these remands toward his sentence when the Commonwealth had no guaranteed say in either the appropriateness or severity of these sanctions. I would strongly submit that "sanctions" cannot be considered the imposition of "time spent in custody" under KRS 532.120(3), because they are not imposed by a court of law.

It is not just the location which determines custody, but also the authority to

impose it. A remand to jail as part of the treatment program is no different than a referral by drug court to treatment at The Hope Center or Crossroads. Confinement of a sort is required in both if the person is to continue in drug court. But, to my knowledge, courts are not required to give jail credit for time spent in treatment centers. It is not considered "time spent in custody."

I would submit that if criminal defendants are afforded credit for drug court sanctions, prosecutors may well want to have a guaranteed say in the sanctions imposed. They should. The Commonwealth should be a part of any proceeding where the legally constituted sentence that has been imposed by the court as a "result of the charge" is lessened or diminished.

The unfettered discretion of drug court judges, in administering what is a volunteer program, is absolutely critical to the treatment and rehabilitation of drug offenders. We will begin to clutter up this valuable attribute of our drug court when we allow the administrative function of the court to become penal. It becomes penal if we give jail credit for sanctions under the auspices that the time served for those sanctions is the "result of the charge" for which he or she has been convicted.

Our decision here today blurs the critical line between a court "case or controversy" and a treatment arm of the court. I fear that we are taking that first wayward step into diluting drug courts of that broad discretion, participatory decision making by professionals, and informality which so invigorates this program. In doing so, an unclear signal is sent to trial judges as to which hat they are wearing when they sit as drug court judges.

To my mind, it takes the imagination of a child on Christmas Eve to contort sanctions given at a treatment session as "time in custody" spent as result of the charge in the judgment. Because of the need of clear guidance to our drug court judges, and on behalf of the drug court program itself, I respectfully dissent.