RENDERED: APRIL 16, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1845-MR

TYKESHA STOKES                                                          APPELLANT

v.      APPEAL FROM JEFFERSON CIRCUIT COURT
        HONORABLE AUDRA J. ECKERLE, JUDGE
        ACTION NO. 19-CR-000877-002

COMMONWEALTH OF KENTUCKY                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, DIXON, AND MCNEILL, JUDGES.

DIXON, JUDGE: Tykesha Stokes appeals from the order holding her in contempt of court entered by the Jefferson Circuit Court on December 17, 2019. After careful review of the briefs, record, and the law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On December 17, 2019, Stokes was present in Jefferson Circuit Court for the sentencing hearing of her son, Dominique Parker. After his sentence was

announced, Stokes loudly exclaimed, "I don't know how you all sleep at night!" The trial court directed the sheriff to take Stokes into custody as she was leaving the courtroom. The sheriff was the only bailiff present and, charged with keeping Parker in custody as well as the order of the courtroom, could not pursue Stokes after she exited the courtroom. A deputy apprehended Stokes outside the courtroom in the corridor awaiting the elevator. Stokes was escorted before the trial court and informed she was to serve 30 days in jail. In response, Stokes was argumentative and disrespectful, and the court threatened to lengthen her sentence if she continued such behavior. A short time later, Stokes was represented by her son's trial counsel who offered an apology on her behalf and requested relief from imprisonment so that Stokes would not lose her job. The trial court refused to modify Stokes's sentence, and this appeal followed.

**STANDARD OF REVIEW**

"We review the trial court's exercise of its contempt powers for abuse of discretion, *Lewis* [*v. Lewis*], 875 S.W.2d [862,] 864 [(Ky. 1993)], but we apply the clear error standard to the underlying findings of fact." *Commonwealth, Cabinet for Health and Family Servs. v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011) (citing *Blakeman v. Schneider*, 864 S.W.2d 903 (Ky. 1993)). "The test for abuse of discretion is whether the trial [court's] decision was arbitrary, unreasonable,

unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993

S.W.2d 941, 945 (Ky. 1999) (citations omitted).

## ANALYSIS

On appeal, Stokes argues the trial court abused its discretion by

finding her in criminal contempt and sentencing her to 30 days' imprisonment

without conducting a hearing. "Contempt is the willful disobedience toward, or

open disrespect for, the rules or orders of a court." *Commonwealth v. Burge*, 947

S.W.2d 805, 808 (Ky. 1996). Contempt may be civil or criminal. Here, we are

dealing with criminal contempt, which:

> includes those acts done in disrespect of the court or its
> processes or which obstruct the administration of justice
> or tend to bring the court into disrepute. It covers not
> only acts which directly and openly insult or resist the
> powers of the court or the persons of the judges, but to
> consequential, indirect, and constructive contempts
> which obstruct the process, degrade the authority, and
> contaminate the purity of the court.

*Mitchell v. Commonwealth*, 206 Ky. 634, 268 S.W. 313 (1925). *See also A.W. v.*

*Commonwealth*, 163 S.W.3d 4, 10-11 (Ky. 2005).

Contempt may also be direct or indirect. Another panel of our Court

described the distinction between the two as follows:

> direct contempt occurs while the actor is before the court
> and is "an affront to the dignity of the court" which may
> be punished summarily. Indirect criminal contempt, on
> the other hand, "'is committed outside the presence of the
> court and requires a hearing and the presentation of

evidence' in order 'to establish a violation of the court's order.  It may be punished only in proceedings that comport with due process.'"

*Brockman v. Commonwealth*, 185 S.W.3d 205, 208 (Ky. App. 2005) (footnotes omitted).  Here, it is clear from the record this case concerns direct contempt as the basis of the contempt order occurred in the presence of the court.

There are also varying degrees of contempt:  petty, serious, or somewhere in between.  The record herein demonstrates that Stokes's behavior—while no doubt is to be taken seriously—was of the "petty" variety.  Kentucky's highest Court has observed:

> traditionally and under current Supreme Court doctrine a court may proceed summarily to sanction petty contempts committed directly in the court's presence. [*Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 832, 114 S.Ct. 2552, 2559, 129 L.Ed.2d 642 (1994).]  Such on-the-record contempts are "self-proving," as it were, and thus do not require the court to assume a prosecutorial role in identifying or establishing them.  The court's sanctioning response is a judicial act, and it is an act so naturally to be anticipated that the direct contemnor may be presumed to have notice of it.  Where the conduct giving rise to the sanction occurs directly on the record, moreover, that record, even without benefit of formal hearing and adversarial briefing, will generally provide an adequate basis for appellate review of . . . the trial court's "nearly unlimited discretion" in exercising its contempt powers to assure the orderliness and decorum of its proceedings.

*Cabinet for Health and Family Servs. v. J.M.G.*, 475 S.W.3d 600, 615 (Ky. 2015).

Nevertheless, Stokes contends the trial court made factual findings regarding her conduct both inside the courtroom and outside the court's presence, meaning the trial court found her guilty of direct and indirect contempt without sufficient due process because a hearing was required. Specifically, she challenges the order for addressing her conduct outside the courtroom regarding her attempt to flee via the elevator. Stokes's intended means of escape after leaving the courtroom is largely immaterial to the substance of the trial court's order, which would be well supported even if the language concerning the means of escape were omitted. Furthermore, we may affirm for any reason supported by the record. *Peterson v. Foley*, 559 S.W.3d 346, 349 (Ky. 2018). The mere fact Stokes evaded custody by continuing to walk away and exiting the courtroom after hearing the trial court's order is sufficient evidence to hold her in direct contempt. The fact Stokes's brief custodial evasion extended to the hallway does not transform her behavior from direct to indirect contempt requiring heightened criminal due process consideration. Herein, the trial court had already determined Stokes's sentence for contempt before she exited the courtroom. As the trial court did not increase Stokes's days of incarceration due to whatever occurred outside its presence, such clearly made no impact on the court's prior determination.

Stokes further asserts the trial court relied on statements allegedly made by her that are not part of the video record on appeal; however, Stokes failed

to include the record in her appeal. It is well-established that it is an appellant's duty to see that the record is complete on appeal. *Commonwealth, Dept. of Highways v. Richardson*, 424 S.W.2d 601, 603 (Ky. 1968). "It is also reasonable to place upon appellant the duty to designate and file a record sufficient to enable the court to pass on the alleged errors." *Burberry v. Bridges*, 427 S.W.2d 583, 585 (Ky. 1968). "[W]e have consistently and repeatedly held that it is an appellant's responsibility to ensure that the record contains all of the materials necessary for an appellate court to rule upon all the issues raised." *Clark v. Commonwealth*, 223 S.W.3d 90, 102 (Ky. 2007). When the complete record is not before an appellate court, we are bound to assume the omitted record supports the decision of the trial court. *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky. 1985). We will not "engage in gratuitous speculation . . . based upon a silent record." *Id.* Accordingly, here we must assume any omitted portion of the video record supports the trial court's contempt order.

Stokes also takes issue with the trial court's disagreement with her assertion that she was remorseful for her conduct based on the trial court's stating, "it does not appear that [defense counsel] had the opportunity to speak with her[.]" This issue is immaterial to the trial court's decision. The trial court is not bound by Stokes's remorse, or lack thereof. We see no clear error or abuse of discretion in this regard.

Stokes's final argument is that the trial court's contempt order was an abuse of its discretion because the punishment was arbitrary, unfair, and unreasonable. She asserts the punishment was not "reasonably related to the *nature* and *seriousness* of the party's contemptuous behavior." *Meyers v. Petrie*, 233 S.W.3d 212, 216 (Ky. App. 2007) (emphasis in original) (citing *U.S. v. Conole*, 365 F.2d 306, 308 (3d Cir. 1966)). However, Stokes offers little, if any, support for this argument. "It is not our function as an appellate court to research and construct a party's legal arguments." *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005). We will not search the record to construct Stokes's argument, nor will we go on a fishing expedition to find support for this underdeveloped argument. "Even when briefs have been filed, a reviewing court will generally confine itself to errors pointed out in the briefs and will not search the record for errors." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979). The trial court has much discretion in determining an appropriate contempt sentence, and we will not disturb that discretion.

## CONCLUSION

Therefore, and for the foregoing reasons, the order of the Jefferson Circuit Court is AFFIRMED.


ALL CONCUR.

-7-

BRIEFS FOR APPELLANT:

Kristin Logan Mischel
Rob Eggert
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Lauren Lewis
Assistant Attorney General
Frankfort, Kentucky